B. W. BELL et al., Appellants,

v.

Robert C. OTT, Sr., et al., Appellees.

No. 6150.

Court of Civil Appeals of Texas, Waco.

Sept. 25, 1980.

Rehearing Denied Oct. 30, 1980.

Toufic Nicolas, Nicolas, Morris & Barrow, Corpus Christi, O. T. Moore, Jr., Blundell & Moore, Lockhart, for appellants.

Richard A. Fielder, Richard A. Fielder & Associates, Lockhart, for appellees.

HALL, Justice.

On June 17, 1970, and again on November 21, 1970, defendant R. D. Watts executed instruments denominated "Affidavit of Adverse Possession" in which he claimed ownership of 337.43 acres of land located partly in the John Henry Survey A–12 and the Miles G. Dikes Survey A–92 in Caldwell County, Texas, by reason of adverse possession of the property for "better than ten years" prior to June 17, 1970.[1] The reason

---

1. These instruments are recorded in the deed records of Caldwell County in volume 338, page 205, and volume 340, page 329.

stated in the second affidavit for its execution was to clarify the descriptions given in the first by setting forth a complete metes and bounds description in the second. Also on June 17, 1970, and again on November 21, 1970, defendant Watts executed quitclaim deeds to defendant B. W. Bell conveying Watts's right, title and interest in the 337.43 acres to Bell.[2] Again, the stated purpose of the second quitclaim deed was to clarify the first by setting forth a metes and bounds description. Both affidavits and both deeds were recorded in the deed records of Caldwell County within one month after they were executed.

2. These deeds are recorded in volume 338, page 203, and volume 340, page 327, of the Caldwell

On June 29, 1970, defendant Bell executed an instrument denominated "Contract Of Lease" in which he leased the 337.43 acres to W & L Cattle Co. for a term of five years from the date of execution. W & L Cattle Co. was the assumed name under which defendant Watts and his son–in–law Hadley Larison were doing business. The lease was recorded in Volume 5, page 69, the contract records of Caldwell County in August, 1970.

The 337.43 acres described in the affidavits and quitclaim deeds and the lease are enclosed on the following plat by the lines marked consecutively by the letters A through R and back to A.

County deed records.

On May 15, 1970, which was prior to the execution of the affidavits and quitclaim deeds and lease by Watts and Bell, Basil Zim Zores executed a general warranty deed conveying tract number 5 shown on the above plat, containing 38 acres, to Bell. This deed was recorded in July, 1970, in volume 338, page 154, of the Caldwell County deed records.

This lawsuit was initiated on January 12, 1977, by plaintiffs Robert C. Ott, Sr., and Allen C. Ott against defendants Bell and Watts. The Otts alleged that they were "the owners of the fee simple title" to the tracts shown on the above plat numbered 1 (containing 20.13 acres), 2 (containing 8 acres), 3 (containing 16 acres), and 4 (containing 16 acres), and that the affidavits, quitclaim deeds, and the lease executed and filed of record by defendants created clouds on their title. They prayed for judgment canceling the instruments and declaring them to be of no force and effect thereby removing the cloud.

By way of a first amended petition filed on October 3, 1977, Claude Crenshaw and Corsey Gore Kelley were joined as plaintiffs with the Otts in the suit. The four plaintiffs alleged that they are "the owners of the title" to tracts 1, 2, 3, 4, 5 (containing 38 acres), and 6 (containing 40 acres) shown on the above plat; that the recorded affidavits, quitclaim deeds, and lease executed by Bell and Watts created clouds on their title to the six tracts; that the defendants acted falsely and willfully and maliciously in the execution and recordation of the instruments; that the fair market of "plaintiffs' property" had been damaged in the amount of $50,000.00 by recordation of the instruments; that as the result of defendants' actions plaintiffs may have lost an opportunity to sell some of the property to their damage in the amount of $16,000.00, and they may have lost the opportunity to execute an oil and gas lease on the property to their damage in the amount of $50,000.00; and that they should recover exemplary damages against defendants in the amount of $100,000.00. They prayed for judgment declaring the instruments executed by Watts and Bell to be null and void, and for cancellation of the instruments, and for their actual and exemplary damages.

On December 21, 1977, plaintiffs filed their second amended petition in which they added tract number 7 (containing 100 acres) shown on the above plat to the other six tracts listed in their first amended petition, and alleged that they are "the owners of the title" to the seven tracts.[3] Responding to defendants' special exceptions, plaintiffs later amended their second amended petition by interlineation to allege that plaintiff Robert Ott, Sr., was the owner of tracts 1 and 2; that plaintiff Kelley is the "owner–vendor" and plaintiff Robert Ott, Sr. is the "owner–vendee" of tracts 3 and 4; that plaintiff Crenshaw is "one of the owners along with plaintiff Kelley" of tracts 5 and 6; and that plaintiff Crenshaw is "one of the owners" of tract 7. Plaintiffs reiterated their actions set forth in the first amended petition for removal of the clouds on their titles; alleged that defendants had "conspired together to take possession unlawfully of plaintiffs' property, have filed false affidavits concerning plaintiffs' lands, [and] have torn down plaintiffs' fences"; included a new count for damages on the ground that defendants "have slandered the title to plaintiffs' lands"; and pleaded for actual and exemplary damages. They also asserted a new alternative claim for $15.00 per acre rental value based upon defendants' alleged trespass upon plaintiffs' properties. Plaintiffs prayed for judgment that the affidavits, quitclaim deeds, and lease executed by defendants be declared null and void, that the instruments be canceled

---

**3.** Plaintiffs alleged, and the record, including the judgment, reflects, that descriptions of the seven tracts may be found at the following locations: Tract 1 in volume 356, page 451 of the Caldwell County deed records; tract 2 in volume 357, page 641 of said deed records; tract 3 in volume 169, page 142 of said deed records; tract 4 in volume 169, page 142 of said deed records; tract 5 in volume 78, page 611 of said deed records; tract 6 in volume 78, page 611 of said deed records; and tract 7 "in the plaintiffs' petition in cause number 14,589 styled Claude Crenshaw et al. v. B. W. Bell and R. D. Watts, in the District Court of Caldwell County."

and discharged of record, that the clouds created on plaintiffs' titles by the instruments be removed, and that plaintiffs recover their special and exemplary damages pleaded against defendants.

Defendants Bell and Watts answered with a general denial and a plea that they were "not guilty of the injury complained of" by plaintiffs. Additionally, defendant Bell, by way of affirmative defense, asserted title to the seven tracts under the five-year statute of limitation (article 5509, Vernon's Tex.Civ.St.) [4] and under the ten–year statute (article 5510).[5] Bell's defense on all seven tracts under the five–year statute was based upon Watts's quitclaim deed. His defense on tract 5 under the five–year statute was also based upon the general warranty deed from Basil Zim Zores. His defense on all tracts under the ten–year statute was based upon his claim of ten years' adverse possession through Watts as his "tenant and predecessor in title."

The case was tried to a jury in February, 1978. At the beginning of the trial defendants Bell and Watts both orally and by written disclaimer filed with the court disclaimed any right, title and interest in tract number 7. We shall notice the verdict later in this opinion. Judgment was eventually rendered removing the cloud "upon plaintiffs' title" and "quieting title" against defendants as to all seven tracts, but denying plaintiffs any damages.

Plaintiff Robert C. Ott, Sr., testified that he owned tracts 1 and 2 by purchase; and that he has entered into an "arrangement" to buy tracts 4 and 5 if he can get clear title to those tracts, but that if he cannot get clear title then he is not going to buy. The evidence shows that on June 19, 1973, plaintiff Corsey Gore Kelley and his wife sold and conveyed tract 1 to plaintiff Robert C. Ott, Sr. and his son Robert C. Ott, Jr. by

general warranty deed (recorded in volume 356, page 451, of the Caldwell County deed records); and it shows that on September 1, 1973, Mrs. Hattie Spears Calvin and Mrs. Mae Lester Kelley Moten sold and conveyed tract 2 to plaintiff Robert C. Ott, Sr. and his son Robert C. Ott, Jr. by general warranty deed (recorded in volume 357, page 641 of said deed records). Both deeds were recorded during the months of their execution. Plaintiffs Robert C. Ott, Sr. and Jr. began fencing the perimeters of tracts 1 and 2 in the fall of 1973. There was an existing fence along the south boundary of tract 1 where it adjoins tract 7, and there were remnants of a fence along a part of the east side of Steele Creek where the creek crosses the tracts as approximately shown on the above plat, but there was no fence along the east or north boundaries of the tracts nor along the west boundary of tract 1 where it adjoins the county road. The Otts constructed a four–strand barbed wire fence along the east and north boundaries of the tracts and along the county road boundary on the west side of tract 1, and they removed the remnants of a fence along the east side of Steele Creek. They completed the fencing in March, 1974. Soon thereafter a dispute arose between the Otts and defendant Bell about the Otts's fence along the east boundary of the tracts, and during the dispute Bell and Watts removed and damaged some of the fence. It was Bell's contention with the Otts that he owned the tracts to the east side of Steele Creek, and he offered to purchase the remainder of the tracts from the Otts. They refused to sell and restored their east boundary fence, and they have maintained possession of the two tracts and excluded Bell and Watts therefrom, including the portions east of Steele Creek, since the spring of 1974.

---

4. Art. 5509. Five years' possession.

 Every suit to recover real estate as against a person having peaceable and adverse possession thereof, cultivating, using or enjoying the same, and paying taxes thereon, if any, and claiming under a deed or deeds duly registered, shall be instituted within five years next after cause of action shall have accrued, and not afterward.

5. Art. 5510. Ten years' possession.

 Any person who has the right of action for the recovery of lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward.

The evidence shows without dispute that there are oil and gas wells on some of the tracts in issue which are under lease by several oil companies and are producing. We are unable to precisely locate those wells under the record, but we believe the testimony shows they are located on tracts 3 and 6, and also on tract 2 or 4, or both.

Plaintiff Allen Ott admitted that he does not own any interest in the seven tracts. He is the son of Robert C. Ott, Sr. He testified that he is interested with his father in buying tracts 3 and 4 shown on the above plat, but that "if the cloud is not removed from the title" they will not buy the tracts.

Plaintiffs adduced a substantial amount of testimony of "family history" which was intended to show that the tracts in question were originally owned by a great–grandmother of plaintiffs Corsey Gore Kelley and Claude Crenshaw, and that Kelley (who conveyed tract 1 to plaintiff Robert C. Ott, Sr.) and Crenshaw, and Mrs. Hattie Spears Calvin and Mrs. Mae Lester Kelley Moten (who conveyed tract 2 to Robert C. Ott, Sr.), owned interests in the tracts as heirs and devisees in a chain of title from the great–grandmother. The chain of title sought to be proved is disconnected and lacking in many material parts which would be required to establish title under our laws of descent and distribution. A part of the family history is also reflected in a partition deed executed in 1935 by and between James Dorn, Samuel Dorn, Mrs. Selura Lampkin and her husband, Mrs. Hattie Jennings and her husband, and Mrs. Willie Lee Tolbert and her husband, partitioning and conveying title to tracts 1, 2, 3 and 4 among them, and a warranty deed from Hemsley Cosey, [Jr.] to Nelson Cosey which was executed in 1922 conveying the grantor's interest in tracts 1, 2, 3, 5 and 6, both introduced by plaintiffs. We interpret the evidence of family history to show the following: owners in plaintiffs' chain of title were Hemsley Cosey, [Sr.] and his wife, Adelia Cosey. Those original owners had at least six children (possibly more), who were Mrs. Alice Cosey Meriwether, Mrs. Charity Cosey Dorn, Hemsley Cosey, Jr., Nelson Cosey, Robert Cosey, and Mary Cosey. Alice Co-

sey Meriwether had eleven children, one of whom was Mrs. Rosie Crenshaw. Rosie Crenshaw had six children, but one predeceased her. She died in 1950. One of the five children who survived her is plaintiff Claude Crenshaw. Charity Cosey Dorn had six children, who were Mrs. Hattie Jennings, Mrs. Selura Jackson Lampkin, Mrs. Willie Lee Tolbert, Samuel Dorn, James Dorn, and N. C. Dorn. All six are now deceased, but only N. C. predeceased Charity. Willie Lee Tolbert was the mother of plaintiff Corsey Gore Kelley (who conveyed tract 1 to plaintiff Robert C. Ott, Sr.). Mrs. Tolbert died in 1972. Hattie Jennings was the mother of Mrs. Beatrice Kelley, and Mrs. Kelley was the mother of Hattie Spears Calvin and Mae Lester Kelley Moten (who conveyed tract 2 to plaintiff Robert C. Ott, Sr.) Mrs. Jennings died in 1969, and Mrs. Beatrice Kelley died in 1947.

The undisputed testimony of plaintiffs' witnesses shows there are 150 to 200 descendants of Hemsley and Adelia Cosey, probably 196, who claim or could claim an interest in the tracts in question.

Plaintiff Claude Crenshaw was 72 years of age at the time of trial. He claimed ownership of an interest in tracts 5, 6 and 7. The following testimony given by him on cross examination is a fair summary of and example of the nature and quality of the witnesses' "family history" testimony:

"Q. You, yourself, have not lived on either [tract 5 or 6]? A. No. Q. And I take it from your testimony that you are claiming some interest because someone in your family at one time claimed an interest in the tracts? A. When my mother died, naturally it went to us kids and I had all of her papers. What she was paying [taxes] on, well I took right up. Q. But your mother supposedly took her interest from her mother? A. It was willed to her. Q. All right. By her mother which would be your grandmother? A. That's right. Q. And then your grandmother took if from her mother? Is that right? Your great–grandmother? A. I think that's the way it was handed down. The will. My brother has those

papers. I don't. Q. What you're telling this jury is that way back yonder many years ago your great–grandmother had a claim on tracts [5 and 6] which in turn was willed to your grandmother and in turn to your mother and in turn to her children? Is that your testimony? A. A portion of it what went to my mother, well, it was willed to her. Whatever her portion was. Q. How many children did your mother have? A. Six."

Crenshaw testified that when his grandmother Alice Cosey Meriwether died she left a will; that when his mother Rosie Crenshaw died, in 1950, she left a will giving her property to her five surviving children; and that he was executor of his mother's will.

Mrs. Francis Kelley, the wife of plaintiff Corsey Gore Kelley, testified that her husband suffered a stroke and a brain hemorrhage in 1969, that since then he has been disabled, and that it would be difficult for him to testify; that she and her husband claim an interest in tracts 3, 4, 5 and 6 through "family history"; that they receive an oil royalty check off this property; that until their conveyance of tract 1 to Robert C. Ott, Sr. and Jr. in 1973, they claimed an interest in tract 1; that Mr. Kelley's mother was Mrs. Willie Lee Tolbert, and that Mrs. Tolbert died in March, 1972; that Mrs. Tolbert was paying taxes on "this property" until 1970 "and I think we paid it about a year," but "after we sold the property we just didn't pay taxes no more." Plaintiff Corsey Gore Kelley testified by deposition that he does not know where the property is located, and when asked to identify the land he "might have an interest in" he said, "Well, I can't remember how they explained that now. It's been quite a while since I was told."

Plaintiffs Robert C. Ott, Sr., and Robert C. Ott, Jr. claim ownership interests in tracts 1 and 2 under the general warranty deeds from Mrs. Spears, Mrs. Moten and plaintiff Corsey Gore Kelley. The undisputed evidence also shows that the Otts have held exclusive actual possession of those tracts in person and by and through their tenant since early in 1974.

Hattie Spears Calvin testified that her mother was Beatrice Kelley, who died in April, 1947; that her mother was the daughter of Hattie Jennings, and that Mrs. Jennings died in March 1969; that she conveyed tract 2 to Robert C. Ott, Sr. and Jr., and that her co–grantor in that conveyance Mae Lester Kelley Moten is her sister; that she also claims an interest in tracts 3 and 4; that she "inherited" those properties from her grandmother, Hattie Jennings; that her mother, Beatrice Kelley was Mrs. Jennings's daughter; that her mother died in 1947, and her grandmother died in 1969; that according to the family history "this property originally came from Charity Dorn"; that her grandmother had two sisters, Selura Jackson and Willie Lee Tolbert, and three brothers, Samuel Dorn, James Dorn and N. C. Dorn; that N. C. Dorn died first and Samuel Dorn was the second to die; that Selura Jackson died in 1968, and that she had no children and she was not survived by her husband and she did not leave a will; and that Hattie Jennings and Willie Lee Tolbert each left a will. She then gave this testimony on direct examination by plaintiffs: "Q. Mrs. Calvin, do you know that the wills of Hattie Jennings and Willie Lee Tolbert were probated? A. Were not probated? Q. That means that they were given legal effect in a court of law. In other words, did a lawyer draw up the wills? A. No. Q. Did they take it to the court and make them effective? A. Yes. Q. Okay. Do you know when they took it to the courthouse and made it effective? A. Yes. I'm sure they did because I was present at some of them." Mrs. Calvin also testified that she received oil royalty checks off tract 4 until 1976.

Other "family history" witnesses who are not parties, but who also claim ownership interests in various tracts, were Vivian Roberts (tracts 3, 4, 5 and 6); Joe Hardeman, husband of Katy Roberts Hardeman who was too ill to testify (tracts 4 and 5); Pearl Roberts and her daughter, Jean Roberts (tracts 4 and 5); and Eugene Ross (tract 3). Vivian, Joe (and Katy), Pearl and Jean all claim through James Dorn. Their testimony was that James Dorn died intestate sur-

vived only by his wife Clemmie and her children, his stepchildren, who were Vivian, Katy, and Clyde Roberts; that Clemmie died in 1968; that Pearl is Clyde's surviving wife; and that Jean is Clyde's surviving daughter. Eugene Ross testified that Samuel Dorn married his mother; that his mother died in 1967; that he is Samuel Dorn's surviving stepchild; and that he has been paying taxes on tract 3 since his mother died. Vivian said she receives a monthly oil royalty check off "the property" and uses it to pay taxes on "the property." Joe said that he and Katy receive a small oil royalty check off tract 4, and use it to pay the taxes on that tract. Pearl said she receives an annual oil royalty check off tracts 4 and 5 which she uses to pay taxes. Jean said she receives an oil royalty check off tract 4, and that "from family history" she knows she has an interest in tracts 4 and 5.

The testimony of D. O. Higginbotham reflects that in 1963 he leased virtually all of the 337.43 acres (at least to the east side of Steele Creek, but excluding tract 3) originally claimed by Watts and Bell, from seven or eight people Higginbotham believed from deed and tax records were the owners. At that time all of the land he leased was "open land." Although he could not remember the names of all from whom he leased the tracts in question, he did remember that some were Selura Jackson, Claude Crenshaw, Hattie Jennings, and Clemmie Dorn. His lease was for five years, beginning August 31, 1963, and ending September 1, 1968. He then proceeded to fence the leased property. However, his fence did not include the portions of tracts 1 and 2 west of Steele Creek because, he said, "Willie Lee Tolbert wouldn't give me a lease to it"; and the fence did not include tract 3, because Higginbotham found Virgil Hendershot in possession of it under another lease.

The testimony of Higginbotham and Watts conclusively establishes that in 1966 Higginbotham subleased all of the land he held under lease to Watts for the two remaining years ending on September 1, 1968, and that it was under this sublease that Watts first entered upon the property sometime in 1966 or 1967.

Although there is evidence that plaintiff Crenshaw and some of the non–party claimants have been on tracts 4, 5 and 6 from time to time during the years in question, we believe that the evidence is undisputed that none of them have been in actual, physical possession and use of the surface of those tracts. There is also evidence that since 1963 Virgil Hendershot and his son–in–law Monroe Fairchild have held actual and exclusive possession of tract 3 under lease from an unnamed lessor (not Watts or Bell), grazing cattle on the tract. And the evidence is undisputed that during all pertinent years the employees and other representatives of the lessees and producers of the oil and gas wells on the tracts have entered upon all of the tracts at their will and pleasure without interruption by nor permission of defendants, and made whatever use of the tracts they deemed necessary for the care and production of the wells, including opening and maintaining gaps in fences, using old roads and building new ones, and laying pipelines at locations selected by them.

Defendant Bell testified that he has paid the taxes on all of the 337 acres conveyed to him by Watts for the years 1969 through 1977, and that except for the year 1969 the taxes were timely paid.

The jury found (special issue 1) that Bell "recorded or caused to be recorded a false affidavit concerning the 337 acre tract of land in question," but failed to find (special issues 2 through 7b) that the tracts in dispute were damaged thereby; found (special issue 8) that Robert C. Ott suffered $250.00 damages by reason of the destruction of Ott's fence by Bell, his agents or employees; found (special issue 9) that $30,000.00 "should be assessed" against Bell and $2,000.00 "should be assessed" against Watts "as punitive or exemplary damages"; failed to find (special issue 10) that Bell or Watts repudiated the lease agreement under which they entered the 337 acres, and failed to find (special issue 11) that they repudiated "the co–tenancy, if any, with

other owners of the 337 acres"; failed to find (special issues 12 through 20) in favor of Bell and Watts on their affirmative defenses under the five–year and ten–year statutes of limitations. Special issue 12 related to the portions of tracts 1 and 2 east of Steele Creek under the five–year statute; special issue 13 related to the portion of tract 4 east of Steele Creek under the five–year statute; special issue 14 related to tract 3 under the five–year statute; special issue 15 related to tract 5 under the five–year statute; and special issue 16 related to tract 6 under the five–year statute. Special issues 17 through 20 related to tracts 3, 4, 5 and 6 under the ten–year statute.

The court did not file findings of fact, and none were requested by the parties.

Plaintiffs moved for judgment on the verdict quieting their title in the seven tracts in question, awarding them $250.00 actual damages against both defendants and exemplary damages against each defendant (totaling $32,000.00) as found by the jury; and they also moved for judgment notwithstanding the verdict for $268,-800.00 damages for slander of title.

Prior to the submission of the case to the jury, defendants moved for an instructed verdict on the grounds (1) that there was no evidence of title in plaintiffs "from the sovereign of the soil or from a common source between the plaintiffs and defendants," and (2) that "the possession of tracts [3, 4, 5 and 6] was shown to be in the defendants at all times in issue." After the verdict, defendants moved for judgment notwithstanding the verdict and for the court to disregard certain issues in which they asserted among other matters (1) the jury's award of $250.00 in answer to special issue 8 is not supported by any evidence as to the cost or value of the fence destroyed; (2) the jury's assessment of exemplary damages against defendants in answer to special issue 9 is not supported by a finding that defendants acted with malice nor by any evidence of such conduct; (3) the plaintiffs may not recover the damages found in special issues 8 and 9 because in their testimony plaintiffs asserted only an undivided interest in the property; (4) the answers to

special issues 13 through 20 should be disregarded because the undisputed evidence establishes Bell's defense under both the five–year and ten–year statutes to the tracts to which those issues related since the conveyance of those tracts to Bell by Watts in 1970; (5) the answer to special issue 15 should be disregarded because the undisputed evidence (a) shows that tract 5 was conveyed to Bell by the general warranty deed from Basil Zim Zores in May, 1970, and (b) establishes Bell's defense under the five–year statute based on that deed; and (6) the answers to special issues 1, and 8 through 20, should be disregarded because there is no evidence of title in plaintiffs from the sovereign or from a common source between plaintiffs and defendants.

After reciting the verdict and its receipt by the court, the judgment provides as follows: ·

"It is therefore ordered, adjudged and decreed by the Court that judgment should be rendered in favor of Plaintiffs against Defendants as follows:

"1. That the cloud upon the title of Plaintiffs created by the several deeds and affidavits be removed and that the said deeds and affidavits, each of them, be declared null, void, cancelled and discharged of record.

"2. That title to [tracts 1 through 7, describing them by reference to other instruments containing their descriptions] be quieted against defendants.

"3. That Plaintiffs recover all costs of suit against defendants.

"4. All relief prayed for and not herein granted is hereby denied."

The evidence shows not only the general warranty deed to Bell from Zores conveying tract 5, but it also shows that in December, 1977, Mae Lester Kelley Moten conveyed to Bell, by general warranty deed (recorded in volume 392, page 410 of the deed records of Caldwell County) all of her interest, "if any," in and to the 337 acres claimed by Bell. Of course, the judgment in favor of plaintiffs could not apply to these instruments for they were not in issue in plain-

tiffs' action to remove cloud, and we assume it was not intended to do so.

■ Defendants brought this appeal. They do not assign any error to the trial court's judgment insofar as it relates to tract 7, to which they disclaimed. Neither do they complain that the decree "quieting title" was not pleaded for by plaintiffs. However, they assert that the evidence conclusively establishes their defenses under both the five–year and ten–year statutes of limitations to tracts 1 through 6. Alternatively, they assert the jury's answers on those issues are against the great weight and preponderance of the evidence. We overrule these contentions. Bell relies on the quitclaim deeds from Watts in support of his contention on all tracts under the five–year statute; and he also relies on the general warranty deed from Basil Zim Zores in support of his contention on tract 5 under the five–year statute. The quitclaim deeds recite that Watts "does bargain sell, release and forever quit claim unto the said B. W. Bell, his heirs and assigns, all my right, title and interest in and to that certain tract or parcel of land . . ."; and the habendum clause reads as follows: "To have and to hold the said premises, together with all and singular the rights, privileges and appurtenances thereto in any manner belonging unto the said B. W. Bell, his heirs and assigns forever, so that neither I, the said Raymond D. Watts, nor my heirs, nor any person or persons claiming under me shall, at any time hereafter, have, claim, or demand any right or title to the aforesaid premises or appurtenances, or any part thereof." In *Porter v. Wilson*, (Tex.1965) 389 S.W.2d 650, 654, the Court held that this language does not purport to convey the land itself, but "merely some wholly undefined and uncertain interest therein and in effect is a mere release of an invalid or doubtful claim" and that it is not sufficient to give notice of the nature and extent of the claim asserted thereunder so as to qualify the instrument as a deed under the five–year statute. Moreover, without regard to the issues on repudiation and the jury's answers thereto, it is our view of the evidence and our holdings that defendants' affirmative defenses of adverse possession

of any of the tracts under either the five–year or ten–year statute were not conclusively established, and that in the light of the entire record the jury's answers on those issues are not against the great weight and preponderance of the evidence. The proof on those issues was lengthy and greatly disputed in many material particulars required under the statute, especially as to the notorious and hostile nature of defendants' possession, use, and claim of ownership of the tracts.

■ Defendants contend they were and are entitled to a take–nothing judgment against plaintiffs on the six disputed tracts and that the court erred in overruling their motions for instructed verdict and for judgment notwithstanding the verdict because plaintiffs failed to prove they held title from the sovereign or from a common source with defendants. We overrule these contentions. The principal issue in a suit to quiet title is as to the existence of a cloud that equity will remove. 47 Tex.Jur.2d 553, Quieting Title § 27. The action lies "to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Thomson v. Locke*, 66 Tex. 383, 1 S.W. 112, 115 (1886). The plaintiff is not required to trace his title to either the sovereign or to a common source with the defendant, unless, of course, that proof is necessary to establish plaintiff's superior equity and right to relief. *Katz v. Rodriquez*, 563 S.W.2d 627, 630 (Tex.Civ. App.–Corpus Christi 1977, writ ref'd n. r. e.); *Dalton v. Davis*, 1 S.W.2d 571, 572 (Tex.Comm.App.1928, holding approved); *Lee v. Grupe*, 223 S.W.2d 548, 551 (Tex.Civ. App.–Texarkana 1949, no writ).

Defendants also assert and argue that they are entitled to judgment because there is no evidence that plaintiffs own title to any of the six tracts in dispute. We sustain this contention in part for the reasons that follow.

No issues as to plaintiffs' ownership of the tracts were submitted to the jury, but none of the parties objected to the charge on that ground. Clearly, the court made

implied findings on those issues in support of the judgment in plaintiffs' favor. Defendants do not question the power or jurisdiction of the court to make those findings, but treat the issues as properly tried by the court.

■ A suit to quiet title or to remove a cloud can be maintained only by a person owning an interest in the property involved. 47 Tex.Jur.2d 541, Quieting Title § 12. It is undisputed in our record that plaintiff Allen Ott does not own any justiciable interest in any of the tracts.

■ Plaintiffs Claude Crenshaw and Corsey Gore Kelley based their claims for relief on ownership interest in the six disputed tracts as devisees under the wills of their mothers, and as descendants and heirs of other ancestors in a line going back to their great–grandmother Adelia Cosey. The only evidence of record title in any of their ancestors is that shown in the previously mentioned deed of partition and conveyance executed in 1935 between James Dorn, Samuel Dorn, Selura Lampkin (later Selura Jackson), Hattie Jennings and Willie Lee Tolbert, and the previously mentioned general warranty deed executed in 1922 from Hemsley Cosey, the son of Hemsley and Adelia Cosey, to Nelson Cosey. The general warranty deed conveyed Hemsley's right, title and interest as an heir of his mother and father and of his sister, Mary Cosey, to Nelson Cosey; and it described the tracts as "being the lands formerly owned by my deceased mother, Adelia Cosey." The partition deed set aside that part of tract 1 (on our plat) west of the west line of tract 2 if that line were extended south through tract 1 to Mrs. Willie Lee Tolbert; the remainder of tract 1 and all of tract 2 to Mrs. Selura Lampkin (later Mrs. Selura Jackson); tract 3 to Samuel Dorn; tract 4 to James Dorn; and a 5th tract which is not involved in our lawsuit to Mrs. Hattie Jennings. The partition deed did not purport to deal with tracts 5 and 6. There is evidence that James died intestate prior to 1968 survived by his wife and stepchildren; that Selura Jackson died intestate in 1968, and that she was not survived by her husband nor by any children; that Samuel died prior to 1967 survived by his wife and stepchildren; that

Hattie died in 1969; and that Willie Lee died in 1972. The evidence does not show whether Samuel died testate or intestate; and it does not show whether Nelson Cosey was married, whether he was survived by children, or whether he died testate or intestate. This proof supports implied findings that Willie Lee Tolbert, mother of plaintiff Kelley, and Hattie Jennings, grandmother of Hattie Spears Calvin and Mae Lester Kelley Moten, inherited interests in tracts 1, 2 and 4 from James Dorn and Selura Jackson, but it does not support a finding that Willie Lee or Hattie inherited any interest in tracts 3, 5 or 6, and we find no evidence supporting those findings. Neither do we find any evidence supporting the implied findings that Claude Crenshaw's mother or grandmother owned any interests by inheritance or devise in tracts 5 and 6. Of course, plaintiff Kelley has conveyed his interest in tract 1, but not his interest in tracts 2 and 4, to plaintiffs Robert C. Ott, Sr. and Jr.; and Mrs. Spears and Mrs. Moten (not parties to this suit) have conveyed their interests in tract 2, to plaintiff Robert Ott, Sr. and Jr.

■ Defendants assert there is no evidence of the provisions of the various wills reflected in the testimony. We disagree. The clear import of the testimony is that the witnesses were the devisees in the respective wills of the claimed fractional interests in the tracts owned by the testatrixes. Defendants did not object to the testimony under the "best evidence" rule nor upon the ground of want of evidence that the wills had been probated, and those objections were therefore waived. 1 Texas Practice 27, Law of Evidence § 22; 2 Texas Practice 257, Law of Evidence § 1562. And contrary to defendants' contention, the testimony was not hearsay. It was given in court under oath upon personal knowledge by witnesses who were subject to cross examination. *Aetna Insurance Company v. Klein,* 160 Tex. 61, 325 S.W.2d 376, 381 (1959).

Some of defendants' remaining points and contentions are rendered immaterial by our rulings, above. The others do not re-

flect reversible error under the record. All are overruled.

 Plaintiffs have brought forward several assignments of error by cross points, including complaints that the court erred in not awarding them the $250.00 actual damages (for damages to Ott's fence) and the exemplary damages totaling $32,000.00 found by the jury. There is no evidence to support the award of $250.00 as the amount of damage to the fence, and that finding was properly disregarded on defendants' motion. Rule 301, Vernon's Tex.Rules Civ. Proc. Without a recovery of actual damages, plaintiffs may not recover exemplary damages. 17 Tex.Jur.2d 243, Damages § 177. Moreover, the issue of malice on the part of defendants was not submitted to the jury. Plaintiffs did not object to this omission; and although plaintiffs assert the trial court erred in failing to submit their requested issue on defendants' malice, we do not find in the record where the request was expressly presented to and ruled upon by the court. Under those circumstances the issue was impliedly found against plaintiffs in support of the judgment under the provisions of Rule 279, Vernon's Tex.Rules Civ.Proc.

Some of plaintiffs' remaining cross points are also immaterial in the light of our rulings. The others are without merit. All are overruled.

In view of our rulings on the parties' contentions, we hold as follows:

1. The judgment that plaintiffs take nothing on their actions for damages is correct.

2. Defendants are entitled to judgment that plaintiff Allen Ott take nothing.

3. The title of plaintiffs Robert C. Ott, Sr. and Robert C. Ott, Jr. to tracts 1 and 2 is superior to the title and interests asserted by defendants in defendants' affidavits, quitclaim deeds, and lease, and those plaintiffs are entitled to judgment against defendants quieting their title and removing the cloud thereon as to those tracts.

4. The title of plaintiff Corsey Gore Kelley to tracts 2 and 4 is superior to the title and interests asserted by defendants in those tracts under their instruments, and Kelley is entitled to judgment against defendant quieting title and removing cloud as to those tracts.

5. Plaintiff Corsey Gore Kelley failed to establish his title to tracts 3, 5 and 6, and the judgment in his favor on those tracts is erroneous.

6. Plaintiff Claude Crenshaw failed to establish his title to any tracts in dispute, and the judgment in his favor on tracts 1 through 6 is erroneous.

7. The judgment in favor of plaintiff Claude Crenshaw on tract 7 should be affirmed.

 We believe the respective actions of the plaintiffs as to each of the seven tracts, separately, and their actions for damages are "clearly separable without unfairness to the parties" within the meaning of Rule 434, Vernon's Tex.Rules Civ.Proc. Accordingly, we sever them. Also, it is apparent from the record that the facts relating to Crenshaw's title to tracts 5 and 6 and to Kelley's title to 3, 5 and 6 were not fully developed, and that in the interest of justice those issues should be remanded for another trial. We exercise our discretion to do so. See *Scott v. Liebman,* (Tex.1966) 404 S.W.2d 288, 294. Accordingly, we affirm the judgment in part, reverse and render judgment in part, and reverse and remand in part, as follows:

1. The judgment that plaintiffs take nothing on their actions for damages is affirmed.

2. The judgment in favor of Allen Ott on his suit to quiet title and remove cloud is reversed, and judgment is here rendered that plaintiff Allen Ott take nothing.

3. The judgment in favor of plaintiffs against defendants (1) declaring defendants' two affidavits and two quitclaim deeds null, void, cancelled and discharged of record, and (2) removing the cloud created upon plaintiffs' title to the tracts, and (3) quieting plaintiffs' title to the tracts

against defendants, is affirmed insofar as the judgment relates to tracts 1, 2, 4 and 7. Insofar as it relates to tracts 3, 5, and 6, the judgment is reversed; and plaintiffs' actions to remove cloud and quiet title on tracts 3, 5, and 6 are remanded for another trial.

The costs of this appeal are taxed 60% against plaintiffs Allen Ott, Kelley, and Crenshaw, and 40% against defendants.