**SIMI INVESTMENT COMPANY, INC., Plaintiff,**

v.

**HARRIS COUNTY, TEXAS, Defendant.**

No. CIV.A. H–96–1603.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 26, 1998.

Dixon Montague, Houston, TX, for Plaintiff.

Jay Siskind, Harris County Attorney's Office, Houston, TX, for Defendant.

## Opinion on Judgment

HUGHES, District Judge.

### 1. Introduction.

This case is another of the endless illustrations of the truth that government is an institution that prevents injustice other than that it commits itself. IBN-KHALDUN, 1 MU-QADDIMAH 262 (Franz Rosenthal, trans., 1958) (1394).

A county is preventing a landowner's access to an adjacent street, claiming that a park separates the land from the right of way. The landowner seeks a declaration that its land abuts the right of way. Because the county's title precludes it from creating a park between the thoroughfare and the adjacent land and because the official records show that the county never created a park, the landowner has access to the right of way.

### 2. The Facts.

In the early 1960s, Harris County decided to build an indoor stadium. Two of the promoters were R.E. Smith and Roy Hofheinz. Hofheinz had been Harris County Judge, the chair of the county's governing board known as the county commissioners court. On two referenda, the county issued bonds and built the Astrodome on about 260 acres south of downtown Houston just inside Loop 610. The surrounding land was relatively undeveloped then. Houston Sports Association, a Hofheinz-controlled company, leased the dome from the county to use it as the home field of his baseball franchise and to sublease it to others, like the local football franchise.

The county bought twenty acres from Hermann Hospital Estate to extend Fannin Street southward past the dome and to add to the land for the dome site. The dome was west of the proposed Fannin extension. On the east side of the Fannin extension, the northern segment of the adjacent property was owned by the Hofheinz–Smith interests, the middle segment by McCarthy–Holly Hall, and the southern segment by several unrelated people, one of whom now is Simi Investment Company, Inc. Simi's land is at the far south end of the Fannin extension, now the northeast corner of the intersection of Fannin and Loop 610.

Simi wants access for a driveway from its land directly to Fannin Street. On May 24, 1996, the county commissioners court entered an order denying Simi driveway access to Fannin. The county claims that Simi cannot cross its west boundary onto the Fannin right of way because there is a county park between Simi's land and the Fannin right of way. This supposed park—a notch out of the Fannin right of way—is 5 feet deep and 3,000 feet long; it starts immediately south of the Hofheinz–Smith land and just happens to block all other privately-owned land from access to Fannin for 3,000 feet south to Loop 610. By contrast, the county claims that the Hofheinz–Smith land directly abuts the right of way because the right of way is 105 feet wide there but only 100 feet wide by Simi's land with the remaining five feet being a park. The City of Houston has refused Simi access solely on the county's bare assertions that a park exists and it owns it.

Simi sued Harris County in state court for a variety of claims, including violations of rights secured by the United States Constitution, like the right not to have private

property taken without just compensation. Simi seeks a declaration that its land abuts the right of way of Fannin Street. The county removed the suit because it includes federal questions. Each side has moved for judgment as a matter of law based on an agreed record.

### 3. Jurisdiction.

■ Having removed this action from state court on the basis of federal question jurisdiction, the county now argues that this court does not have jurisdiction because Simi's takings claim is not ripe since it has not exhausted the state procedures for monetary compensation. *See* U.S. CONST. amends. V & XIV; *Trail Enterprises, Inc. v. City of Houston*, 907 F.Supp. 250 (S.D.Tex.1995).

■ The facts pleaded state claims under the Texas Constitution to which no accommodative delay is due. *See* TEX. CONST. art. I, § 17. An interference·with property rights does not have to be an actual consumption by the government to implicate the constitutional restrictions on governmental behavior. *See e.g., Harris County v. Southern Pacific Trans. Co.*, 457 S.W.2d 336, 340 (Tex.Civ. App.—Houston [1st Dist.] 1970, no writ). Whatever the eventual fate of Simi's claim for compensation, Simi is entitled to use this court's authority to correct the county's continuing non-possessory interference with its land. *Kansas, O. & G. Ry. Co. of Texas v. Grayson County*, 5 S.W.2d 542 (Tex.Civ. App.—Texarkana 1928, no writ).

Even if the takings claim is not ripe, Simi has claims other than for compensation. Simi's state court petition stated claims against the county under several legal theories. Simi expressly requested injunctive relief based in part on the county's violation of Simi's rights to governmental regularity under the United States Constitution. U.S. CONST., amend. XIV; Civil Rights Act of 1866, 42 U.S.C. § 1983. These federal questions are ripe without exhaustion of state remedies. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

■ Simi is entitled to seek a judicial declaration under both Texas and federal law. Declaratory Judgment Acts: TEX. CIV. PRAC. & REM.CODE ANN. § 37.001 (1996); 28 U.S.C. § 2201. The county commissioners court's denying Simi driveway access to Fannin affected Simi's rights, and Simi is entitled to a declaration about that, order's validity. A legal action to quiet title is in effect a declaratory judgment. Based on the competing claims, it announces a result that validates one set of propositions about the land. *See* C. FREEMAN, FREEMAN ON JUDGMENTS, § 1353 (1925); *cf. BHP Petroleum Co. v. Millard*, 800 S.W.2d 838 (Tex.1990); *Bell v. Ott*, 606 S.W.2d 942 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.); *McCurdy v. Morgan*, 252 S.W.2d 264 (Tex.Civ.App.—San Antonio 1952, no writ).

This court has jurisdiction.

### 4. Limitations.

■ The county says that Simi waited too long to bring this action. It says that it has been asserting the existence of a park for thirty-six years so the time to bring suit expired long ago. No public record or visible attributes of the land put a buyer on notice of an interest claimed by the county. Persistent repetition of a fraudulent claim does not create title. Simi claims no interest in the "park," and the county claims no interest in Simi's land.

The county is not an abutting landowner to Simi. The county's injury to Simi is an occasional assertion of an interest not adverse to Simi's actual title, but the county asserts an interest distinct.from Simi's that might *affect* the rights included with Simi's ownership of the land. The county's position materially and adversely affects Simi as a result of the city's blind accession to the county's position. Because the county chooses to make the claim, the city supinely refuses to meet its responsibilities regardless of what an independent review of the facts would show.

In anticipation of interference from the county over its land rights, Simi brought this action on May 17, 1996. The county directly interfered with Simi's rights to its land on May 24, 1996, when through an official order

it told the city not to allow Simi access. Because the county has insisted that it will continue in its position, Simi has a present injury and imminent future injuries.

This spasmodic interference is neither continuous nor possessory. This case is more like a slander of title than consumption of Simi's land by a taking or spoilage. *See, e.g., Stein v. Highland Park I.S.D.,* 540 S.W.2d 551, 554 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.) ("Limitations is not a defense to an action to abate a continuing nuisance."); *compare Tennessee Gas Transmission Co. v. Fromme,* 153 Tex. 352, 269 S.W.2d 336, 337 (1954) ("direct invasion of one's property of a permanent character ... the original invasion and its continuance are necessarily injurious, the damage is original, and may be at once fully compensated.").

While limitations may bar the recovery of damages that accrued more than two years before suit, it does not bar an action to stop the county's nuisance of continuing interference.

### 5. *The Deed.*

■ The Hermann Hospital Estate is a charitable trust founded by George Hermann, an early Houston lumber and oil man. In 1961, its assets included a strip of 20.67 acres along the east side of the newly created dome site. It sold that land to the county.

In the deed, Hermann limited the conveyance of the twenty acres to the county: (a) the part along the east boundary had to be used for the right of way for the Fannin extension, (b) the road had to be built within three years, and (c) the remaining property west of Fannin could be used with the dome site as a park. The deed reads:

the Property is being purchased with the intention of extending Fannin Street between the proposed South Loop and Old Main Street Road, with such extension to run in a North–South direction along the Eastern side of the Property described above, with the remaining Western portion of said Property to be used for street purposes or included in a park and stadium site lying along the West side of said Property.

The deed requires Fannin to be built "along the Eastern side" of Hermann's twenty acres, allowing only the property remaining on the "Western portion" to be "included in a *park and stadium site* lying along the West side...." It is beyond dispute that the east side of Fannin has no stadium site and that the west side has both a park and a stadium site.

The Hermann strip was about 222 feet wide, so a 100–foot right of way left about 60% of the tract for the park *west* of the right of way. The deed does not limit the width of the right of way to 100 feet, but what few notations there are among the city and county records indicate a planned width of 100 feet. As it was built, it varies:

In Metro's 1993 sidewalk plans, the width of the right of way is 125 feet at the south side of the Doris intersection, matching the condemnation by the Texas Department of Transportation for Loop 610.

On the City of Houston's 1978 water main plans, the width from the east line of the Hermann tract to the west curb is 112 feet, to the water line west of the curb is 128 feet, and to the chain-link fence securing the dome site is 152 feet.

Use of the land west of Fannin also illustrates the county's lack of precision in its land management. West of Fannin, the Hermann land that was not used for the right of way is a strip about 120 feet wide and 4,000 feet long.

• The Hermann strip has never been added to the land described in the original lease from the county to Houston Sports Association, in successor documents, or in leases with later tenants.

• The fence along the Fannin side of the dome site is neither at the edge of the right of way nor the edge of the land described in the lease.

• The five-foot strip does not appear in the documents between the City of Houston and the county when Houston assumed control of the Fannin right of way.

### 6. *The Location.*

The county has stipulated that the only documentation of an official act establishing

the location of Fannin is the commissioners court's two orders of December 11, 1961, and that they establish the right of way at 100 feet along the east boundary, accepting the deed from the Hermann Estate. Exhibits 11 & 12. The other official county actions, which include authorizing payment to the estate and relinquishing responsibility to the City of Houston for Fannin's maintenance, are ministerial.

A county can act only through an official "commissioners court order" to alter a thoroughfare. TEX. TRANSP. CODE ANN. § 251.051(b)(2) (1996) ("A unanimous vote of the commissioners court is required to ... alter a public road, except to shorten it from end to end.").

Whether the county by fiat could flout the terms of the deed from the Hermann Estate is an open question, but it need not be reached since there was no official act of the county that attempted to change the right of way as granted by the Hermann Estate.

### 7. Indications.

There are several indications that there has never been a park:

#### A. Surveys.

Five surveys—signed and sealed by registered professional surveyors—over the last thirty years show neither a "park" nor the peculiar variation in the right of way's width. These actual surveys all coincide with the deed and with each other; none shows a notch right of way or a park. Exhibits 20–24.

#### B. Plat.

The "park" first appears on a plat drawn as an undated amendment to an earlier plat. The amendment is neither a public record nor a title document and has no date, author, or authority. Even it says, "Location questionable," when the "park" is shown. Exhibit 13. Other errors include (1) showing the east line of the Houston Sports Association lease as the west line of the Hermann tract— leaving a gap of over 120 feet between the leased land and the Fannin right of way—

and (2) showing two directions for a straight line on the east side of the Hermann tract.

#### C. Utilities.

The local gas utility has run a two-inch service line north from Loop 610 through the "park" as if it were the Fannin right of way. Exhibit 19. The local transit authority has installed sidewalks as if the strip were the right of way. Exhibits 19, 20. The city itself has crossed the strip with water lines, apparently without noticing that it had violated the county's park. Exhibits 19 & 20. If there were a park along Fannin's east side, these acts would all be illegal.

#### D. Setback.

The city's requiring a twenty-five foot building setback also suggests that Fannin abuts the land to the east; an intervening five-foot strip would prevent the city's setback rule from applying to the Holly Hall and Simi land. See August 30, 1988, Survey; Section 42–61, Houston Code of Ordinances ("Properties adjacent to major thoroughfares ... must have front, side, and rear building setbacks of not less than twenty-five (25) feet from the adjacent major thoroughfare.").

### 8. Motivation.

The five-foot wide park mysteriously appears sometime between the deed to the county and the preparation of an undated, unofficial amended revised plat by Turner & Collie, the county's engineers. Interestingly, that ridiculously narrow park limits the access of only those property owners who would compete with the Hofheinz–Smith interests. Hofheinz and Smith are both dead, and the influence they once exercised has dissipated. The county's interest in this strip can now best be explained as a way to lower the acquisition price of property which may at some future date be needed for a potential expansion of the dome's facilities.

Favoring friends and favoring oneself by the assertion of a non-existent public interest—a fraudulent title claim—is not permissible activity for government in America. A court may conclude that the county is illegally interfering with the property of one of its citizens without determining precisely what

motivated either the county's original position or its current intransigence. The United States Constitution requires that government not be arbitrary. Were the county's motive in this case free from all taint, its continuing to use governmental authority to assert a right that is manifestly nonexistent is arbitrary.

If the county had properly established a five-foot park in 1961 and had insisted on its preservation against all incursions for thirty-six years, the question of the illegality of using governmental authority for the direct benefit of cronies might be harder. The county did not establish a park, neither has it defended it uniformly and equally.

### 9. *Park Bonds.*

The county says that it somehow is constrained from allowing this strip to be a right of way because the land was bought with funds from park bonds. The whole Hermann tract was bought with park-bonds funds; the order authorizing the purchase expressly allocated 100 of the tract's 220 feet of width to right of way use. The county cannot use its own ancient malfeasance as a defense to its new wrong.

### 10. *Evading the Deed.*

The county contends that principles of deed construction support the existence of a park. There is no need to resort to principles of deed construction; the deed is plain on its face.

The county's position on the deed would be wrong if the construction were an issue. The county says that the deed clause requiring the right of way along the *eastern* boundary is not an essential part of the transaction represented by the deed. Of course, the best evidence of the transaction thirty-six years ago is the formal documentation of the transfer; it says the road is to be on the east and the park on the west.

■ When a grantor attempts to exercise a right of reentry on a condition subsequent, courts examine the deed carefully to ascertain whether the language indicates an absolute grant or a conditional grant. Where "a deed contains apt language denoting the grant of an unconditional fee estate in land, other language contained in the instrument, which merely denotes that the grant was made for a particular purpose is not regarded as implying that the grant is conditional." *Hughes v. Gladewater County Line I.S.D.*, 124 Tex. 190, 76 S.W.2d 471, 473 (1934) (despite grantor's saying that "it is understood that the land is deeded to the Trustees for School purposes only," other language made deed absolute, defeating reversion when school was abandoned).

The deed is the only evidence of the nature of the transaction itself. Its significance remains compelling even if the Hermann Estate could not have recovered the land from the county. Simi does not seek to enforce a right reserved to the Hermann Estate or itself under the deed; rather, it seeks to enforce its rights under state and federal law derived from the county's locating Fannin Street (a) where it is and (b) where it bound itself to locate it by accepting the fee granted.

### 11. *Right to Access.*

■ Simi's western boundary is the same as the Hermann–Fannin–County–City eastern boundary; they abut by definition. A property that abuts a thoroughfare, like Fannin, is entitled to access to that thoroughfare under Texas law; the right of access to a thoroughfare is a property right that cannot be taken without compensation. *State v. Meyer*, 403 S.W.2d 366, 371 (Tex.1966) ("That this right of access is a property right which is encompassed by Article 1, Section 17 of the Constitution of Texas ... is so well-settled as to require no citation of authority."); *DuPuy v. City of Waco*, 396 S.W.2d 103, 108 (Tex.1965) ("It is the settled rule in this state that an abutting property owner possesses an easement of access which is a property right; that this easement is not limited to a right of access to the system of public roads; and that diminishment in the value of property resulting from a loss of access constitutes damage."); *City of Waco v. Texland Corp.*, 446 S.W.2d 1, 2 (Tex.1969) ("[A]n abutting property owner possesses an easement of access which is a property right."). Fannin Street in Houston is not

abandoned. *Cf. State v. Fuller*, 407 S.W.2d 215 (Tex.1966).

**12. *Road versus Right of Way.***

 The county argues desperately that the actual concrete of Fannin's pavement does not touch Simi's land. The right of way for a street could have no street on it, but it would still be a right of way. A multilane roadway named Fannin Street, complete with curbs and gutters, extends south from Old Main to Loop 610 along the eastern side of the Hermann tract as the deed, commissioners court order, and city ordinance provided it should. The distance between the concrete and the east boundary of the right of way is consistent for the whole length; there is no five-foot offset in the pavement where the "park" starts.

**13. *Degree of Impairment.***

The county says that it cannot be liable unless its impairment is "material and substantial." Assuming that standard applies to this case, the county has completely and absolutely denied Simi's access to Fannin; that is material and substantial. Simi is not complaining that some governmental act of the county affects its access. Simi complains that it has a property interest under state law that the county is required to honor.

When the county passed Fannin Street to the City of Houston, the county lost all interest in the right of way. The county abandoned its title to the city, yet it persists in interfering with its former neighbor's property.

**14. *Conclusion.***

Harris County is illegally asserting this peculiar interest causing present harm to Simi. The right of way for Fannin Street abuts Simi's tract; Simi has a right of access to Fannin Street across the Hermann–Simi boundary. The judgment defining the vacuity of the county's claim should preclude future assertions of this claim, making an injunction unnecessary at this time. As a precaution, jurisdiction is reserved, as is the issue of attorney's fees.

Addendum to Opinion
*Simi Investments, Inc. v. Harris County, Texas*
Chronology

1. Smith and Hofheinz acquire property north of Simi's property.

August 9, 1946 John C. Garrott and Warren B. Garrott convey to McCarthy Center, Inc., 58.20 acres several blocks north of the Simi property, along the eastern boundary of the Hermann Hospital tract that became the right of way line of Fannin Street.

September 6, 1949 McCarthy Center, Inc., conveys to Glenn H. McCarthy 20 acres out of the south part of the 58.20 acres.

September 7, 1949 Glenn H. McCarthy conveys to Holly Hall, Inc., a charitable organization, this 20 acres.

August 24, 1961 Hilton Center, Inc., (successor to the McCarthy Center) conveys to Hilton Hotels Corporation 38.18 acres remaining out of the north part of the original 58.20 acres.

August 24, 1961 Hilton Hotels Corporation conveys to R.E. Smith and Roy Hofheinz this 38.18 acres.

2. The county fixes the location of Fannin.

August 8, 1961 City of Houston approves general location of proposed streets in vicinity of the dome, including Fannin, limited that "before Harris County actually commences the acquisition of right of way for a particular street, the details of the alignment and project for that street shall be submitted to and approved by the City's Director[s] of Public Works ..., Traffic ... and ... City Planning."

August 21, 1961 Harris County Attorney's Office sends the Commissioners Court the August 8, 1961, city ordinance "authorizing acquisition by

County of right of way" and "two maps, with street alignments with correction as to Fannin Street...." (The two maps could not be found.).

August 28, 1961 Four days after Hofheinz/Smith buy the 38.18–acre tract from Hilton, the Commissioners Court approved the general location and alignment of Fannin Street on a 20.68–acre tract about 220 feet wide and 4,000 feet long, running north to south, owned by the Hermann Hospital Estate, and authorized the right of way department to acquire it for right of way purposes. (The maps in the order could not be found.).

The 20.68 acres abut the Hofheinz/Smith 38.18 acres as well as the property several blocks south now owned by Simi.

October 16, 1961 Turner & Collie, engineers for the county, draws a plat that depicts Hermann's 20.68 acres to be acquired by the County; it does not depict the location of Fannin. This is not a survey.

December 5, 1961 Hermann Hospital Estate conveys to Harris County the 20.68–acre tract for extending Fannin Street between Old Main Street and the proposed South Loop "along the Eastern side" of the 20.68–acre tract, "with the remaining Western portion of said Property to be used for street purposes or included in a park and stadium site lying along the West side of said Property."

December 11, 1961 Commissioners Court authorizes the acceptance of the Hermann deed and payment for the 20.68 acres based on the language in the deed requiring Fannin along the "eastern side" of the 20.68 acres.

The order also says that "Harris County is to move back the existing fences to the new right of way line...." Harris County's existing fence is on Simi's property line.

After an exhaustive search by the County and Simi, no later order of Commissioners Court was found that modified in any way the alignment of the Fannin Street right of way described in the Hermann deed and commissioners' order of December 11, 1961.

December 11, 1961 The same day, the Commissioners Court ratified and confirmed the 20.68 acre purchase and conveyance as a right of way purchase and conveyance.

3. Engineers' Interlude.

Unknown: Alterations are made to a copy of the October 16 Turner & Collie plat; however, no revision date indicates when the alterations were made, neither is there an indication of the purpose of the later version of the plat. The "new" plat has hatch marks defining the "eastern side of the Houston Sports Association Lease" as well as the spontaneous appearance of the "park" off set.

The altered plat depicts the alignment of Fannin Street on the eastern side of the 20.68–acre tract as it runs north-to-south *until* it comes to the southern boundary of the Hofheinz/Smith 38.18–acre tract, where the right of way-line takes a 90 degree turn west for 5.00 feet and then another 90 degree turn south, leaving the apparent Fannin Street right of way 5.00 feet off of all properties south of the Hofheinz/Smith tract; however, along this 5.00 foot strip appears the notation "location questionable."

Reinforcing the "working paper" questionable character of this plat is that it has two different directions for the north-south line that forms the eastern boundary of what is depicted as the Fannin Street right of way from Holly Hall south to the South Loop although the north-south line does not change di-

rections (S 2° 26' 33" E and S 2° 29' 56" E).

4. County denies access to Fannin at Hofheinz's dictation.

December 2, 1964 C.J. Ashley with Texaco, Inc., writes W. Kyle Chapman, County Commissioner for Precinct One, requesting access to Fannin from property at the northeast corner of Fannin Street and the South Loop. Ashley sent a copy to Richard P. Doss, County Engineer.

January 4, 1965 Doss writes Hofheinz at Smith/Hofheinz Interests asking whether Hofheinz will allow Texaco access to Fannin Street.

January 7, 1965 Hofheinz as president writes Doss that the Houston Sports Association is "unalterably opposed to the granting of such access" to Fannin.

Hofheinz incorrectly asserts in his letter that the strip of land on the east side of Fannin Street is covered by the Houston Sports Association's lease with Harris County; the H.S.A. lease extends in an easterly direction into the Hermann Hospital Estate property only approximately 38 feet. The County and Simi agree that the H.S.A. lease has never extended east of the Fannin Street right of way.

January 12, 1965 Doss writes to Chapman telling him of Hofheinz's opposition to access to Fannin. In this letter, Doss offers to notify Texaco that its request for access has been denied. A hand-written note on the letter says: "Mr. Doss to notify Texaco access denied."

5. Post-acquisition events about the Fannin right of way

March 7, 1974 Harris County removes Fannin Street from its Road Logs, yielding jurisdiction over Fannin to the City of Houston.

November 6, 1974 Entex constructs a gas line in the east side of the Fannin Street right of way from Naomi south to the 610 South Loop. The Entex pipeline runs north-to-south inside the "park" offset. No Commissioners Court Order or other document can be found to show the County authorized an easement in the "park" to Entex.

June 14, 1978 The City of Houston approves plans for an 8–inch water line that crosses the "park" offset. The plans show no strip between the Fannin Street right of–way and the properties to the east of Fannin Street. No Commissioners Court Order or other document can be found to show the County authorized an easement for the City in the "park."

April 29, 1993 The Metropolitan Transit Authority of Harris County (of which the County is a constituent government that appoints two board members) approves the construction of a sidewalk on the east of Fannin from Greenbriar to the 610 South Loop on the "park" property. The sidewalk plans show the Fannin right of way abutting all of the properties on the east of Fannin, including the Simi property. These plans do not show an intervening strip between the Fannin Street right of way and the properties to the east.

No Commissioners Court Order or other document can be found to show the County authorized an easement for METRO.

The County and Simi Investment agree that the County cannot sell or otherwise encumber its park land unless the encumbrance is approved by Commissioners Court Order with public notice under a state statute.

The County and Simi Investment agree that no Commissioners Court Order can be found authorizing Entex, Houston, or METRO to construct facilities on the property and, further, that there is no evi-

dence that the County complied with the statutory notice requirements to convey an interest in this property to Entex, the City, or METRO.

6. The only *surveys* of the Fannin right of way show no strip.

August 30, 1988 Signed and sealed survey for Holly Hall tract, immediately south of Hofheinz/Smith tract, depicts the property line as the edge of the Fannin right of way and indicates the 25-foot building setback line from that property line. This conforms to the Houston ordinance on building lines.

Section 42–61, *Houston Code of Ordinances* says that: "Properties adjacent to major thoroughfares ... must have front, side, and rear building setbacks of not less than twenty-five (25) feet from the *adjacent major thoroughfare.*" If a five-foot wide "park" intervened between Fannin right of way and the Holly Hall property, no 25-foot setback would have been required.

January 8, 1991 Signed and sealed survey of portions of Fannin right of way shown abutting Simi's by Fred W. Lawton of South Texas Surveying Associates, Inc.

April 28, 1993 Signed and sealed survey by PGAL Engineering showing the Fannin right of way from Naomi south to the Loop 610 South abutting all properties on its east.

August 15, 1996 Signed and sealed Survey by Karen Rose Engineering & Surveying of Fannin right of way and the Entex pipeline, METRO sidewalk, and other landmarks in the Fannin right of way as they are situated near vicinity of the Simi property.

The survey shows the east line of the Fannin Street right of way and the west line of the Simi property as the same, with no strip of land between the Fannin right of way line and the Simi property.

Order

1. Simi Investment Company, Inc., may supplement the record and file its amended complaint (19, 21).

2. Remand is denied (5).

Interlocutory Judgment

1. Harris County never established a park and has no other interest lying between:
 A. The eastern boundary of the Hermann Estate tract conveyed to Harris County by the deed recorded at volume 4579, page 403, of the Harris County deed records, and
 B. The western boundary of Lots One and Four of Block 68 of Knight's Main Street Addition as recorded at volume 572, page 117, in the deed records of Harris County, Texas, which lots are now owned by Simi Investment Company, Inc.

2. Harris County has no interest in an intervening 5-foot by 3,000-foot strip east of Fannin Street and west of Knight's Main Street Addition and Holly Hall property, making illegal its interference with the owners' relation to the City of Houston and Fannin Street.

3. Harris County has ceded to the city of Houston all of its right, title, and interest in the eastern-most 100 feet of land conveyed to it by the Hermann Estate.

4. The City of Houston's Fannin Street right of way abuts directly and fully the west boundary of Lots One and Four of Block 68 of Knight's Main Street Addition as recorded at volume 572, page 117, in the deed records of Harris County, Texas.

5. Simi Investment Company, Inc., may have direct access to the Fannin Street right of way from its Lots One and Four of Block 68 of Knight's Main Street Addition.