**Allon R. HAHN, Individually and d/b/a Hahn's Gulf Services, Appellant**

v.

**Bertrand R. LOVE, Appellee.**

No. 01–11–00264–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 14, 2012.

Rehearing Overruled Aug. 21, 2012.

18

J. Richard Hall, Houston, TX, for Appellant.

Charles E. Fitch, Law Office of Charles E. Fitch, P.C., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices JENNINGS and KEYES.

## OPINION

EVELYN V. KEYES, Justice.

Appellee Bertrand R. Love, the purchaser of a property located at 1615 and 1621 Wheeler Street in Harris County, Texas ("the Property"), intervened in a lawsuit between appellant, Allon R. Hahn, individually and *d/b/a* Hahn's Gulf Services (collectively, "Hahn"), and Mid–Town Roofing and Construction, Inc. ("Mid–Town"), seeking to enjoin Hahn from carrying out an execution sale on the Property to satisfy a judgment lien against a third party, O'Neal Session, and to remove Hahn's claims as a cloud on the title. Hahn filed counterclaims against Mid–Town and Love

and a third-party action against O'Neal, Myria, and Pamela Session for claims under the Texas Uniform Fraudulent Transfer Act ("Fraudulent Transfer Act" or "TUFTA"),[1] and he sought a declaratory judgment that he had a valid lien on the Property. Following an interlocutory summary judgment and a trial to a jury, the trial court entered final judgment in favor of Love on his claims, and it entered judgment against the Sessions and Mid–Town in favor of Hahn.[2]

In five issues, Hahn argues that (1) & (2) the evidence supporting the jury's verdict was legally and factually insufficient; (3) the charge was erroneous; (4) the trial court abused its discretion in excluding certain testimony and documentary evidence; and (5) the trial court erred in granting Love's motion for partial summary judgment on the ground that the 2002 deed transferring the property from Session to Mid–Town was legally sufficient to pass title.

We affirm.

## Background

In 1988, Hahn won a judgment against O'Neal Session for $77,136.05 plus interest. On April 16, 1992, Hahn filed an abstract of judgment, but Session had no assets to seize at that time. Then, in August 2001, the Property was conveyed to Session. Hahn's judgment lien automatically attached to the Property by virtue of a properly recorded and indexed abstract of judgment.[3] However, Hahn's judgment lien expired on April 16, 2002, and his judgment against Session became dormant.[4]

By a general warranty deed dated April 26, 2002 ("2002 Deed"), Session conveyed the Property to Mid–Town, an entity owned and operated by Session's daughter Pamela. The deed lacked a metes and bounds description of the property, but it provided the following description:

> TR 11 (00 TR 4) HOLMAN OUTLOT 68; also known as 1615 Wheeler, Houston, Texas 77004 and situated in Harris County, Texas.
>
> TR 15A(001) (TR 15a) HOLMAN OUTLOT 68; also known as 1621 Wheeler, Houston, Texas 77004 and situated in Harris County, Texas.

This transfer was not recorded until January 2004.

Between August 2003 and January 2004, the Sessions and Mid–Town made two attempts to sell the Property to Walter Strickland. The first sale fell through when Fidelity National Title Company sent the title commitment to Session and Strickland, requesting payoff of Hahn's judgment lien, and the Sessions refused to pay the amount of the judgment lien from the proceeds. Real estate broker Herman Gary was involved in the first attempted

---

1. *See* Tex. Bus. & Com.Code Ann. §§ 24.001–.013 (Vernon 2009).

2. The Sessions and Mid–Town are not parties to this appeal, and Hahn does not challenge the trial court's judgment as it relates to them.

3. *See* Tex. Prop.Code Ann. §§ 52.001–.004 (Vernon 2007 & Supp. 2011); *Wilson v. Dvorak*, 228 S.W.3d 228, 233–34 (Tex.App.-San Antonio 2007, no pet.) (outlining process for creating judgment lien and stating, "When properly recorded and indexed, an abstract of judgment creates a judgment lien that is superior to the rights of subsequent purchasers and lien holders").

4. *See* Tex. Prop.Code Ann. § 52.006 (Vernon Supp. 2011) (governing length of time judgment lien is valid); Tex. Civ. Prac. & Rem.Code Ann. § 34.001 (Vernon Supp. 2011) (governing length of time judgment is active and providing for renewal of judgment with writ of execution issued within ten years of previous writ).

sale as Strickland's broker. Gary then acted as a broker for the Sessions in a subsequent attempted sale, which also fell through.

On December 10, 2003, Hahn filed a motion to revive his judgment against Session and sent notice of the hearing on the motion to the Sessions.

On January 21, 2004, the 2002 Deed reflecting the conveyance from Session to Mid–Town was recorded. Two days later, on January 23, 2004, following a hearing, Hahn obtained an order for the revival of his 1988 judgment against Session. On March 1, 2004, Hahn filed for record a second abstract of judgment, again creating a judgment lien against Session's real property.

On March 3, 2004, Session executed a correction deed to clarify the 2002 conveyance of the Property to Mid–Town ("2004 Correction Deed"). This correction deed was filed on March 15, 2004, and contained a metes and bounds description of the Property.

In early April 2004, Gary, the real estate broker, contacted Love about purchasing the Property. Love purchased the Property sight unseen by arranging for a cashier's check for $448,587.13 to be sent to American Title Company. Gary took the necessary closing documents to Love to sign in New Orleans. The parties later stipulated that Love's purchase price constituted a "reasonably equivalent value" for the Property.

On April 14, 2004, Mid–Town executed a deed that conveyed the Property to Love. This deed was recorded on April 16, 2004.

In August 2004, Hahn attempted to proceed with an execution sale of the Property to satisfy his judgment against Session. Mid–Town sued Hahn, seeking a tempo-

rary restraining order and a temporary and permanent injunction prohibiting the execution sale of the Property. Love intervened in the suit, seeking an injunction prohibiting the sale of the Property and seeking to remove the cloud from his title.

Hahn filed counterclaims against Mid–Town and Love and a third-party action against Session, his wife Myria Session, and other members of the Session family, Pamela Session and Toshoner Session Egans,[5] seeking a declaratory judgment that he had a valid lien against the property. Specifically, Hahn asked for a judgment declaring (1) that the conveyances of the Property from Session to Mid–Town and from Mid–Town to Love were both void as fraudulent conveyances under TUFTA; (2) that the March 1, 2004 judgment lien attached to the Property because the 2002 Deed was void for lack of sufficient legal description at the time the second abstract of judgment was filed for record; and (3) that the April 14, 2004 conveyance of the property from Mid–Town to Love was subject to Hahn's judgment lien and to the imposition of a constructive trust because Love was not a bona fide purchaser for value in good faith and without notice of Hahn's interest in the Property. Hahn also sought an execution sale to satisfy the judgment lien and a money judgment for assets that had been fraudulently conveyed.

Love moved for summary judgment, requesting that the trial court remove Hahn's claims as a cloud on Love's title to the Property and that Hahn take nothing against him. Love argued that he was entitled to the bona fide purchaser defense set out in section 24.009 of the Fraudulent Transfer Act. The trial court granted that motion and severed Love's claims, and Hahn appealed that ruling to this Court.

5. Hahn eventually nonsuited Toshoner Session Egans.

We reversed the trial court's summary judgment, observing that the issue of a party's notice of fraudulent intent is a question of fact that generally goes to a jury and concluding that fact questions existed "both as to whether the transfer of the [P]roperty to Love was fraudulent and as to Love's actual or constructive notice of facts and circumstances indicating the intent to defraud for purposes of the Fraudulent Transfer Act." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex.App.-Houston [1st Dist.] 2009, pet. denied). We likewise concluded that genuine issues of material fact precluded Love's right to summary judgment on his suit to remove the cloud on his title. *Id.* at 532–33. We further stated that "[b]ecause the sufficiency of the legal description in the purported 2002 deed is not material to the proof of Love's right to removal of the cloud from his title, we do not address [it]." *Id.* at 533 n. 13.

On remand to the trial court, Love moved for partial summary judgment on the legal sufficiency of the description contained in the 2002 Deed. Love argued that the 2002 Deed contained a description of the property that was legally sufficient to satisfy the statute on conveyances, and, therefore, "no judgment lien attached to the Property in Love's hands." Hahn likewise moved for partial summary judgment, arguing that the 2002 Deed was insufficient to convey the Property and was void, and, thus, "Love . . . had constructive notice of Hahn's Judgment Lien when he purchased the property." The trial court denied Hahn's motion and granted Love's. The trial court subsequently signed a declaratory judgment that "the General Warranty Deed dated April 26, 2002, from O'Neal Session and [Myria] Mae Session, as grantors, to Mid–Town Roofing Construction, Inc., as grantee, and recorded under Clerk's File No. X340658 in the Official Public Records of Real Property of Harris County, Texas, contains a sufficient legal description such that the property in question could be located and identified with reasonable certainty."

The parties proceeded to trial on the remaining issues. Relevant to the issues between Love and Hahn,[6] Love testified that he moved from Houston to the Atlanta area in approximately 2003. He testified that he had purchased more than twenty properties for investment purposes through Gary and that he purchased the Property with his own funds for the purpose of reselling it at a profit. Love testified that Gary called him in Atlanta about buying the Property and told Love "that it was a good deal and somebody else's financing didn't go through and we could get it and, you know, turn around and sell it." Love testified that Gary did not tell him, and he did not know, anything about who was selling the Property. He "slept on it" and decided to proceed with the purchase the next day. His decision was based on Gary's recommendation that they could make money reselling the Property and on his successful investments in properties selected by Gary in the past.

Love testified that, before he bought the Property and became involved in the underlying suit, he had never met or heard of O'Neal Session, any of Session's family, or Hahn. He testified that, before he purchased the Property, he did not know anything about Mid–Town and had had no previous business dealings with Mid–Town or any of the Sessions. He also testified that, as far as he was aware at the time he purchased the Property, he believed Gary's only interest in the deal was earn-

---

6. O'Neal and Pamela Session also testified regarding their role in these transactions. Hahn also testified.

ing a commission as the broker. He also testified that Gary typically earned another commission when Love resold an investment property.

Love testified that he had met Gary twenty or twenty-five years previously through his father. He also testified that he had had prior dealings with Walter Strickland but did not "really know him personally." Love testified that, several years previously, he had personally financed a sale of property to Strickland in an arrangement set up by Gary, but he did not know until he became involved in the current lawsuit that Strickland had been the previous purchaser of the Property whose financing had fallen through. He further testified that he did not conduct his own search of the property records related to the Property, but instead relied on the title company to check the relevant records.

The jury found, in Questions One and Two, that O'Neal and Myria Session transferred the Property to Mid–Town with the actual intent to hinder, delay, or defraud their creditors, and that they did so without receiving a reasonable equivalent value in exchange for the transfer. In Question Three, the jury also found that, in connection with their transfer of the Property to Mid–Town, O'Neal and Myria Session engaged in a transaction for which their remaining assets were unreasonably small in relation to the transaction. In Question Four, the jury found, with respect to the transfer of the Property to Mid–Town, that Pamela Session and Mid–Town were both insiders. The jury found that Love was not an insider. In Question Five, the jury found that Love purchased the Property from Mid–Town in good faith. Finally, the jury found that Pamela Session was responsible for the conduct of Mid–Town and that Hahn was owed $224,822.36 as a result of the fraud found in Questions One

through Four. Finally, the jury awarded Hahn $177,000 in attorney's fees for "preparation and trial with respect to the Sessions and Mid–Town," but it awarded no attorney's fees for preparation and trial with respect to Love.

Hahn moved for a directed verdict, arguing that Mid–Town had not established its entitlement to a permanent injunction prohibiting him from conducting an execution sale of the Property.

On November 10, 2010, Hahn moved for judgment notwithstanding the verdict against Love as well as against Mid–Town and the Sessions, and he sought legal rulings on the issues of Mid–Town's injunction, Love's action to remove the cloud on his title, and Hahn's affirmative defense of unclean hands, constructive trust cause of action, and attorney's fees against Love, Mid–Town, and the Sessions. Hahn also moved to disregard the jury findings on Questions Four and Five.

On November 12, 2010, the trial court signed the final judgment. It awarded Hahn $224,822.36 plus $177,000 in attorney's fees against the Sessions and Mid–Town, jointly and severally, and it ordered that Hahn take nothing against Love. The judgment also contained a declaration removing Hahn's lien as a cloud on Love's title.

On November 18, 2010, Hahn requested findings of fact and conclusions of law pursuant to Texas Rules of Civil Procedure 296 and 297. On November 22, 2010, the trial court denied the request with a notation that "this case was tried to a jury." Hahn subsequently filed a notice of past due findings of fact and conclusions of law on December 9, 2010, specifically arguing that the Fraudulent Transfer Act provides that the trial court determines equitable and just attorney's fees and that the trial court "decides as a matter of law the following equitable relief: declaratory

judgment, constructive trust, removal of cloud from title."

On December 13, 2010, Hahn moved for a new trial, arguing that the jury charge was defective and that the jury's findings that Love was not an insider and was a good-faith purchaser, as well as its finding that he was owed no attorney's fees by Love, were not supported by sufficient evidence. Hahn's motion for new trial also complained of the various evidentiary rulings excluding Love's testimony on his knowledge of American Title's duty to search the title records and exhibits 7, 27, 28, 59, 62, 68, 70, 71, and 72. The trial court denied Hahn's motion for a new trial on January 25, 2011. Hahn subsequently appealed, complaining of the portions of the trial court's judgment that he take nothing on his claims against Love and that his interest in the Property be removed as a cloud on Love's title.

### Partial Summary Judgment on Sufficiency of 2002 Deed

 In his fifth issue, Hahn argues that the trial court erred in granting Love's partial summary judgment on the issue that the description of the Property in the 2002 Deed transferring the Property from O'Neal and Myria Session to Mid–Town was legally sufficient to pass title from the Sessions to Mid–Town.[7]

### A. Standard of Review

We review de novo the trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). To prevail on a traditional summary judgment motion, a movant has the burden of proving that he is entitled to judgment as a matter of law and that no genuine issues of material fact exist. TEX.R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex.2004). A party moving for summary judgment on his own claim must conclusively prove all essential elements of the claim. *See* TEX.R. CIV. P. 166a(a); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex.2005).

If the movant meets his burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995). To determine if the nonmovant has raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if a reasonable factfinder could do so, and

**7.** This Court refused to address the sufficiency of the legal description in the opinion on Hahn's interlocutory appeal, stating that "[b]ecause the sufficiency of the legal description in the purported 2002 deed is not material to the proof of Love's right to removal of the cloud from his title, we do not address [it]." *Hahn v. Love*, 321 S.W.3d 517, 533 n. 13 (Tex.App.-Houston [1st Dist.] 2009, pet. denied). In his appellate brief, Hahn repeatedly cites this opinion as the "law of the case." The law of the case doctrine is defined as "that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subse-

quent stages." *Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex.2006). It applies only to questions of law and does not apply to questions of fact. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex.1986). This Court's previous opinion in *Hahn* addressed the issues in the case in the summary judgment context and concluded that genuine issues of material fact precluded summary judgment. We did not make a legal holding regarding the sufficiency of the description of the Property in the 2002 Deed that would be subject to the law of the case doctrine. *See id.*

disregarding contrary evidence unless a reasonable factfinder could not. *Fielding*, 289 S.W.3d at 848. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). When the trial court's summary judgment does not state the basis for the court's decision, we must uphold the judgment if any of the theories advanced in the motion are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex.2003).

### B. Sufficiency of the Legal Description

■ To be valid, a conveyance of real property must contain a sufficient description of the property to be conveyed. A property description is sufficient if the writing furnishes within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty. *AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex.2008) (holding that both voluntary and involuntary conveyances of land require property description that would allow individual to locate conveyed property with reasonable certainty). In *AIC Management*, the Texas Supreme Court discussed its previous holding in *Morrow v. Shotwell*, 477 S.W.2d 538 (Tex.1972), that the essential elements of a property description may not be supplied by reference to a survey that did not exist at the time the deed was executed. *Id.* at 648. The court stated, however, that "[Harris County Appraisal District ("HCAD")] records are not the type of extrinsic evidence we rejected in [*Morrow*]" *Id.* ("The 'TR 12' in the property descriptions is an explicit reference, within the four corners of the deed, to existing writings, such as tax tract maps, within HCAD records. The property description in the constable's deeds references 'TR 12 AB 659 T.S. Roberts * situated in Harris County,' which is a division within the HCAD tax rolls that can be used to assist a surveyor in locating the land.... [I]f records still in existence from 1989 could identify the tract and where it overlapped the Crewses' property, the description would be sufficient.").

The supreme court also stated, "We have held that deeds in which the property is described as simply 'my property' are sufficient when extrinsic evidence shows that the party owns only one tract of land answering the description." *Id.* at 648 (citing *Pickett v. Bishop*, 148 Tex. 207, 223 S.W.2d 222, 223 (1949)). It also cited *Sanderson v. Sanderson*, which upheld as sufficient "a contract that simply described the property as 'Mrs. Kelton's farm in Haskell County' so long as that evidence established that Mrs. Kelton owned only one farm in Haskell County at the time." *Id.* at 648–49 (citing *Sanderson v. Sanderson*, 130 Tex. 264, 109 S.W.2d 744, 746, 748 (1937)).

■■ We are also mindful that a deed should not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property the parties intended to convey. *Teledyne Isotopes, Inc. v. Bravenec*, 640 S.W.2d 387, 389 (Tex.App.-Houston [1st Dist.] 1982, writ ref'd n.r.e.); *cf. AIC Mgmt.*, 246 S.W.3d at 645 ("Texas law does not require courts to scrutinize the proceedings of a judicial sale with a view to defeat them; instead, 'every reasonable intendment will be made in their favor, so as to secure, if it can be done consistent with legal rules, the object they were intended to accomplish.'"). Every presumption should be indulged to reach the conclusion that some interest should be passed by a deed. *Templeton v. Dreiss*,

961 S.W.2d 645, 657 (Tex.App.-San Antonio 1998, pet. denied).

The 2002 Deed contained the legal description of the land used by HCAD. The parties do not contest that HCAD had, and still has, records that contain information about the exact size and location of the lot. *See AIC Mgmt.*, 246 S.W.3d at 645, 648 (holding that property description is sufficient if writing furnishes within itself, or by reference to existing writing, means by which particular land to be conveyed may be identified with reasonable certainty, and indicating that HCAD records may constitute such extrinsic, existing writings). Furthermore, the deed also contained a complete street address. *See id.* at 648–49; *see also Apex Fin. Corp. v. Garza*, 155 S.W.3d 230, 237 (Tex.App.-Dallas 2004, pet. denied) ("We have held that a street address or a commonly-known name for property may be sufficient property description if there is no confusion."). Here, the parties alleged no confusion as to which parcels of land or which portions of the land were to be conveyed. Rather, the issue raised by Hahn was whether the fraudulent intent in the Sessions' and Mid–Town's conveyance of the land affected the validity of the sale to Love.

Thus, we conclude that the description of the property in the 2002 Deed was sufficient to transfer the interest from O'Neal Session to Mid–Town.

Hahn argued to the trial court that this Court's opinion in *Reiland v. Patrick Thomas Properties, Inc.*, 213 S.W.3d 431 (Tex.App.-Houston [1st Dist.] 2006, pet. denied), supports his contention that the property description was inadequate, and, therefore, the 2002 Deed was void. In *Reiland*, the appellant contended that an alleged right of first refusal was void as a matter of law due to an inadequate legal description of the property involved because there was no metes and bounds description of the 3.0152–acre tract that was subject to that right. 213 S.W.3d at 436. Reiland "argued that the Right of First Refusal was deficient as a matter of law because '(1) there is nothing in the description that would allow an individual to identify the three-acre tract with reasonable certainty, and (2) the document wholly fails to define the size, shape or boundaries of the land to which it relates.' " *Id.* This Court agreed with Reiland's contentions and observed that nothing "indicat[ed] the shape of the block or the courses and lengths of its border lines or those of the 3.0152 acres." *Id.* at 437. We stated:

> [T]o locate the 3.0152 acres with definiteness, it is necessary to first fix the location of the piece of land of which it is a part, and then to locate the 3.0152 acres by boundaries, or metes and bounds of some character "adjoining on the east side that certain 1.984 tract."

*Id.*

In the present case, the legal description used by HCAD and the street address of the property conveyed were included in the deed itself. No party disputes that the HCAD records were existing at the time the 2002 Deed was executed and recorded and could be used to identify the property with reasonable certainty. This case is thus distinguishable from *Reiland*, where the exact location and shape of the 3.0152–acre tract was identified in no other way than as "adjoining on the east side that certain 1.984 acre tract" conveyed by another document and by a general reference to the property being "3.0152 acres in the William Walters Survey, Abstract 851, Harris County, Texas." *See id.* at 436. Thus the references to extrinsic documents in *Reiland* failed to identify the size, shape, or boundaries of the relevant parcel of land with reasonable certainty, unlike the deed here.

We conclude that Love conclusively established that the property description in the 2002 Deed was legally sufficient. *See City of Keller*, 168 S.W.3d at 816. Hahn failed to raise a genuine issue of material fact regarding the sufficiency of the property description. *See Siegler*, 899 S.W.2d at 197. Thus, the trial court did not err in granting Love's partial summary judgment on this issue.

## C. Legal Effect of Summary Judgment

■ Hahn complains that the ruling that the description of the Property in the 2002 Deed was legally sufficient "moved the goal posts" for him and erroneously allowed Love to claim that he had no duty to examine the 2004 Correction Deed "to determine any adverse claim to the property he was purchasing." Hahn argues that Love had such a duty because the insufficiency of the description of the Property in the 2002 Deed put Love on notice that the Property was still owned by Session and that, therefore, Hahn's judgment lien on the Property was valid.

First, the trial court's legal ruling on the sufficiency of the 2002 Deed to convey title to the Property from Session to Mid–Town was correct. The Property was conveyed to Mid–Town in 2002 and the transfer was recorded in January 2004. Second, the effect of the transfer of title by the 2002 Deed was (1) that Hahn's first judgment lien disappeared when it expired, he failed to revive it, and the Property was transferred by Session to Mid–Town with no judgment lien attached; and (2) that Hahn's second abstract of judgment, which he filed for record on March 1, 2004, did not create a judgment lien attached to the Property and appeared in Love's chain of title.

Hahn's first judgment lien expired on April 16, 2002. *See* Tex. Prop.Code Ann. § 52.006 (Vernon Supp. 2011) (governing length of time judgment lien is valid). The transfer from Session to Mid–Town, according to the 2002 Deed, was executed on April 26, 2002, when no valid lien was recorded against Session, the debtor. *See id.* The 2002 Deed was recorded on January 21, 2004. Two days later, Hahn obtained the order reviving his 1988 judgment against Session, and on March 1, 2004, he recorded his second abstract of judgment, thereby creating a new lien on any real property belonging to Session, the debtor, but not on the Property, which belonged to Mid–Town. *See* Tex. Prop. Code Ann. § 52.001 (Vernon Supp. 2011) ("[A] first or subsequent abstract of judgment, when it is *recorded and indexed* in accordance with this chapter, if the judgment is not then dormant, constitutes a lien on and attaches to any real property of the defendant . . . .") (emphasis added); *Wilson v. Dvorak*, 228 S.W.3d 228, 233 (Tex.App.-San Antonio 2007, no pet.) (holding that no lien is created by mere rendition of judgment, but is only created when judgment creditor complies with Property Code chapter 52, beginning with obtaining an abstract of judgment).

When the second lien was created—on March 1, 2004—the Property had already passed out of Session's hands by virtue of the 2002 Deed. That second lien based on the revived judgment never attached to the Property. Therefore, the Property passed to Mid–Town unencumbered by the first lien against Session, which had expired, or the second lien, which only attached to real property owned by Session, the judgment debtor, at the time the lien attached. *See* Tex. Prop.Code Ann. § 52.001 (providing that properly recorded and indexed abstract of judgment constitutes lien and attaches to any real property of defendant-judgment debtor), § 52.004(a)-(b) (Vernon 2007) (requiring county clerk to record properly authenti-

cated abstracts of judgment in county real property records and enter on alphabetical index to real property records name of each plaintiff and defendant, along with volume and page or instrument number in records in which abstract is recorded); *Murray v. Cadle Co.*, 257 S.W.3d 291, 296–97 (Tex.App.-Dallas 2008, pet. denied) ("The purpose of the index is to provide notice to subsequent purchasers of the existence of the judgment and to indicate the source from which the full information about the judgment may be obtained.").

▌ "Chain of title refers to the documents which show the successive ownership history of the land," and includes " 'the successive conveyances, commencing with the patent from the government, each being a perfect conveyance of the title down to and including the conveyance to the present holder.' " *Munawar v. Cadle Co.*, 2 S.W.3d 12, 20 (Tex.App.-Corpus Christi 1999, pet. denied) (emphasis omitted) (quoting *Reserve Petroleum Co. v. Hutcheson*, 254 S.W.2d 802, 806 (Tex.Civ. App.-Amarillo 1952, writ ref'd n.r.e). A purchaser of property is not charged with notice of deeds involving the same property which are recorded outside of his chain of title. *Andress v. Condos*, 672 S.W.2d 627, 631 (Tex.App.-Fort Worth 1984, writ ref'd n.r.e.); *see also Swanson v. Grassedonio*, 647 S.W.2d 716, 719 (Tex.App.-Corpus Christi 1982, no writ) (holding that when person takes conveyance from another who holds under first deed from his grantor, that purchaser is not bound to look further for subsequent deeds from that same grantor).

▌ Thus, Love is not charged with notice of the 2004 Correction Deed, because it was recorded outside his chain of title. Furthermore, just as a party has no obligation to search for subsequent deeds from the original grantor of the property, a purchaser has no obligation to search for subsequent liens entered against the original grantor after the Property has been transferred. *See Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex.1982) ("[A] purchaser is bound by every recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims.").

Following the trial on the merits, Hahn obtained a judgment against the Sessions and Mid–Town based on his claims under the Fraudulent Transfer Act. To achieve his goal of executing on the Property owned by Love that had been transferred in violation of the Fraudulent Transfer Act, Hahn had to establish that Love had actual or constructive notice either of the fraudulent intent of Session's and Mid–Town's transfers of the Property or of Hahn's interest in the Property. He failed to carry this burden.

We overrule Hahn's fifth issue.

### Sufficiency of the Evidence

In his first two issues, Hahn argues that the evidence supporting the jury's findings that Love was not an insider and that he purchased the Property in good faith was legally and factually insufficient and that the trial court erred in denying his motion to disregard these jury answers.[8] He also

8. Hahn also argues that the trial court erroneously refused to make findings of fact and conclusions of law pursuant to Texas Rules of Civil Procedure 296 and 297. However, Rule 296 provides, "In any case tried in the district or county court *without a jury*, any party may request the court to state in writing its find-

ings of fact and conclusions of law." Tex.R. Civ. P. 296 (emphasis added). Rule 297 provides the deadline by which the trial court must file its findings and conclusions. Tex.R. Civ. P. 297. This case was tried to a jury, so the provisions of Rules 296 and 297 do not apply.

argues that the trial court erred in denying his motion for judgment notwithstanding the verdict; his motion for new trial; his claims for constructive trust, declaratory judgment, and attorney's fees; and his affirmative defense of unclean hands. Finally, he argues that the trial court erred in removing Hahn's claims as a cloud on Love's title to the Property.

## A. Standard for Reviewing Jury Findings and Trial Court's Ruling on Motion to Disregard

■ We review the grant or denial of a motion for judgment notwithstanding the verdict or a motion to disregard jury findings as a legal-sufficiency challenge. *See City of Keller*, 168 S.W.3d at 823. In conducting a legal-sufficiency review, we credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827; *Brown v. Brown*, 236 S.W.3d 343, 348 (Tex.App.-Houston [1st Dist.] 2007, no pet.). We consider the evidence in the light most favorable to the finding under review and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 822. We sustain a no-evidence contention only if: (1) the record reveals a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810; *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997).

In reviewing a challenge to the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 468 (Tex.App.-Houston [1st Dist.] 2007, pet. denied) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986)). When an appellant attacks the factual sufficiency of an adverse finding, he must demonstrate that the finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001).

Whether reviewing the evidence for legal or for factual sufficiency, we assume that jurors decided questions of credibility or conflicting evidence in favor of the finding if they reasonably could do so. *City of Keller*, 168 S.W.3d at 819. We do not substitute our judgment for that of the factfinder if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

Hahn sought to set aside the transfers from Session to Mid–Town and from Mid–Town to Love under the provisions of the Fraudulent Transfer Act. A fraudulent transfer is a transfer by a debtor with the intent to hinder, delay, or defraud his creditors by placing the debtor's property beyond the creditor's reach. *Hahn*, 321 S.W.3d at 524–25 (citing Tex. Bus. & Com. Code Ann. § 24.005(a)(1) (Vernon 2009) and *Nobles v. Marcus*, 533 S.W.2d 923, 925 (Tex.1976)). As we previously stated,

If intent to defraud is proved, a creditor may obtain "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim," "an attachment or other provisional remedy," "an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred," or "any other relief the circumstances may require."

*Id.* at 526 (quoting Tex. Bus. & Com.Code Ann. § 24.008(a) (Vernon 2009)). Also, a creditor who has obtained a judgment on a claim against the debtor may levy execu-

tion on the asset transferred or its proceeds. *Id.*

However, the remedies provided creditors by the Fraudulent Transfer Act are subject to the limitation in section 24.009, which provides a defense for bona fide purchasers. *Id.* Section 24.009 provides that a "transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." TEX. BUS. & COM.CODE ANN. § 24.009(a) (Vernon 2009). Thus, good faith is an affirmative defense to a fraudulent transfer claim. *Hahn,* 321 S.W.3d at 526 (citing *Flores v. Robinson Roofing & Constr. Co.,* 161 S.W.3d 750, 756 (Tex. App.-Fort Worth 2005, pet. denied)). A person invoking that affirmative defense "carries the burden of establishing good faith and the reasonable equivalence of the consideration obtained." *Id.*

Here, Love asserted the good faith affirmative defense to Hahn's claims against him under the Fraudulent Transfer Act. The parties stipulated that Love paid a reasonably equivalent value for the Property. *See id.* at 527. Therefore, the only issue for Love to establish at trial was that he purchased the property in good faith.

### B. Jury's Finding that Love Was Not an Insider

Hahn argues that Love was an insider as a matter of law and that "no evidence of probative force or inference supports the jury's answer" finding that Love was not an insider. Hahn also argues that the jury's answer on this issue was against the great weight and preponderance of the evidence and was manifestly unjust.

A transfer to an insider is one of the factors relevant to proving actual intent to defraud under the Fraudulent Transfer Act. *Id.* at 525 (citing TEX. BUS. & COM.CODE ANN. § 24.005(b)). When a transferee is an insider and knows the transferor is insolvent at the time of the transfer, he cannot be a good faith transferee. *Id.* at 525 n. 8 (citing *Flores,* 161 S.W.3d at 756 and *Putman v. Stephenson,* 805 S.W.2d 16, 20 (Tex.App.-Dallas 1991, no writ)). In general, an insider is "an entity whose close relationship with the debtor subjects any transactions made between the debtor and the insider to heavy scrutiny." *Id.* (quoting *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.,* 80 S.W.3d 601, 609 (Tex.App.-Houston [1st Dist.] 2002, no pet.)). In determining insider status, courts are to consider (1) the closeness of the relationship between the transferee and the debtor and (2) whether the transactions were at arm's length. *Id.; see also* TEX. BUS. & COM.CODE ANN. § 24.002(7) (Vernon 2009) (providing that "insider" to individual debtor includes, among others, "a relative of the debtor or a general partner of the debtor," "a partnership in which the debtor is a general partner," or "a corporation of which the debtor is a director, officer, or person in control").

Here, Hahn points to no evidence that Love had a close relationship with O'Neal Session, the debtor, or with any of Session's family or the related entity, Mid-Town. Instead, Hahn's argument that Love was an insider focused on the relationship among Gary, Strickland, and Love. The evidence established that Gary and Love had known each other for more than twenty years and had completed more than twenty real estate transactions together. The evidence also established that, in one of those previous transactions, Gary presented Strickland as a potential purchaser for one of Love's investment properties. Love sold that property to Strickland and personally financed the

sale. Love testified that he did not know O'Neal Session or any of his family prior to the filing of their lawsuit, and he had had no prior dealings with any of the Sessions or Mid–Town. Love further testified that he was unaware that Strickland was the person who had attempted to purchase the Property before his funding fell through.

The evidence does not establish the existence of a close relationship between Love, as the transferee, and O'Neal Session, the debtor, or any parties related to Session, like Mid–Town. *See Hahn,* 321 S.W.3d at 525 n. 8. Furthermore, the record contains no evidence suggesting that any of the transactions in which Love was involved, whether with Gary, Strickland, or the Sessions and Mid–Town, were not arm's length transactions. *See id.*

Thus, we conclude that the evidence supporting the jury's finding that Love was not an insider is supported by legally and factually sufficient evidence. *See City of Keller,* 168 S.W.3d at 819–20; *Francis,* 46 S.W.3d at 242.

However, it is not necessary to prove that a transferee is an insider to prove the transferee's knowledge of the transferor's fraudulent intent. *Hahn,* 321 S.W.3d at 525 n. 8. Accordingly, we turn to Hahn's argument that the jury's finding that Love was a good faith purchaser was not supported by legally and factually sufficient evidence.

## C. *Love's Status as a Bona Fide Purchaser in Good Faith*

■■■■■ A transferee who takes property with knowledge of such facts as would excite the suspicions of a person of ordinary prudence and put him on inquiry of the fraudulent nature of an alleged transfer does not take the property in good faith and is not a bona fide purchaser. *Id.*

at 527. Notice of fraudulent intent or any third-party claim or interest can be either actual or constructive. *See Madison v. Gordon,* 39 S.W.3d 604, 606 (Tex.2001); *Hahn,* 321 S.W.3d at 527. Actual notice results from personal information or knowledge; constructive notice is notice the law imputes to a person not having personal information or knowledge. *Madison,* 39 S.W.3d at 606; *Hahn,* 321 S.W.3d at 527. Thus, Love was required to prove that he had no actual or constructive notice of the fraudulent intent of the transferor of the Property, Mid–Town, of the transferor to Mid–Town, Session, or of Hahn's interest in the Property.

Hahn argues that there is no evidence as a matter of law, or no more than a scintilla of evidence, supporting the jury's finding that Love was a bona fide purchaser in good faith; rather, the evidence presented at trial showed as a matter of law that Love had actual and constructive knowledge of Hahn's adverse interest in the Property. Hahn also argues that the jury's finding of Love's good faith was against the great weight and preponderance of the evidence.

### i. *Love's actual notice*

■■■■ Hahn argues that Love had actual notice of the fraudulent nature of the Sessions' and Mid–Town's transfers and of his interest in the Property because, in the attempted sale to Strickland, the Sessions were presented with payoff information at the closing and Pamela Session refused to pay it. Hahn further argues that Gary, who acted as the broker for Strickland in the first failed sale and for Strickland and the Sessions in the second failed sale, had knowledge of Hahn's interest in the Property that is imputed to Love. However, he cites no evidence to support his conten-

tion.[9]

There is no evidence in the record that Love was aware of these transactions and the related circumstances. Love testified that he had no previous knowledge of or dealings with the Sessions or Mid–Town. He also testified that Gary provided him with limited details regarding the transaction: Gary told him the contract price and general location of the Property; he indicated that he believed it was a good investment for Love; and Gary told him that he needed to act quickly because his contract on the property was about to end after the previous purchaser's financing fell through. Love also testified that he did not complete any kind of title search or investigation into the property records. *See City of Keller,* 168 S.W.3d at 819, 822 (holding that we must assume that jurors decided questions of credibility or conflicting evidence in favor of finding if they reasonably could do so and must not substitute our judgment for that of factfinder).

Thus Love's testimony established that he had no actual notice or personal knowledge of the fraudulent nature of the Sessions' and Mid–Town's transfers, nor did he have actual notice of Hahn's interest in the Property. Hahn presented no testimony or documentary evidence contradicting Love's testimony.

### ii. Love's constructive notice

Hahn also argues that Love had constructive knowledge of Hahn's interest through the documents recorded in the chain of title under which Love took the Property. *See Hahn,* 321 S.W.3d at 532 (holding that "a purchaser is bound by

every recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims," regardless of his actual notice of such recitals) (quoting *Westland Oil Dev. Corp.,* 637 S.W.2d at 908).

Specifically, Hahn argues that: (1) he revived his judgment against Session and recorded it before the Property was transferred to Love, so that Love was charged with notice of his second lien; and (2) the deficient nature of the 2002 Deed and the 2004 Correction Deed meant that the Property was still owned by Session, the judgment debtor, when Hahn revived the judgment, and put Love on inquiry notice into the fraudulent nature of the transfer of the Property from Session to Mid–Town.

We have already held that the trial court properly ruled that, as a matter of law, the property description in the 2002 Deed was adequate. The 2002 Deed served to transfer the Property from the judgment debtor, O'Neal Session, to Mid–Town after Hahn's first judgment lien against Session had expired and before Hahn recorded his second abstract of judgment. Therefore, the second lien, which attached only to real property owned by Session, did not attach to the Property at issue here, which was not then owned by the judgment debtor, Session, and, thus, it would not have appeared in Love's chain of title. *See* Tex. Prop.Code Ann. § 52.001 (holding that recorded and indexed abstract of judgment constitutes lien on and attaches to any real property of judgment debtor); *Wilson,* 228

**9.** In his pleadings, Hahn alleged that Gary acted as an express or implied agent of the Sessions, Mid–Town, Strickland, and Love. However, Hahn did not obtain a jury finding on the issue of agency, and he does not raise any arguments or cite any authority regarding the existence or effect of an agency relationship between Gary and Love or any of the other parties. Thus, this issue is waived. *See* Tex.R.App. P. 38.1(f). Furthermore, Hahn neither alleged nor argued at trial or on appeal any other legal theory that would allow Gary's knowledge to be imputed to Love.

S.W.3d at 233 (holding that no lien is created by mere rendition of judgment, but is only created when judgment creditor complies with chapter 52).

We have likewise concluded that Love was not charged with notice of the 2004 Correction Deed, as it was a subsequent deed from the original grantor that was recorded outside his chain of title. *See Andress,* 672 S.W.2d at 631; *Swanson,* 647 S.W.2d at 719. As we discussed above, nothing in the chain of title under which Love took the Property gave him constructive notice of Hahn's interest in the Property.

We conclude that the jury's finding that Love was a bona fide purchaser of the Property in good faith is supported by legally and factually sufficient evidence. *See City of Keller,* 168 S.W.3d at 810; *Francis,* 46 S.W.3d at 242.

### D. Remaining Legal Claims

In the remainder of his first and second issues, Hahn argues that the trial court erred: (1) in denying his claims for a constructive trust, for a declaratory judgment that he had a valid lien on the Property, and for attorney's fees and his affirmative defense of unclean hands; (2) in granting Love's claim to remove Hahn's cloud on his title; and (3) in denying his motions for judgment notwithstanding the verdict and motion for new trial.

Hahn's claims for constructive trust, declaratory judgment, and unclean hands all depend upon a finding that Love was not a good faith purchaser for value of the Property. We have already held that the evidence supporting the jury's finding that Love purchased the Property in good faith was legally and factually sufficient. Furthermore, Hahn did not prevail on any of his claims against Love for which attorney's fees are recoverable. Therefore, Hahn was not entitled to any attorney's

fees from Love, and the trial court did not err in denying these claims.

To prove his claim for removal of the cloud from his title, Love had to establish, as a matter of law, that he had a right of ownership and that Hahn's adverse claim was a cloud on the title that equity would remove. *See Hahn,* 321 S.W.3d at 531. A suit to clear title or quiet title—also known as a suit to remove cloud from title—relies on the invalidity of the defendant's claim to the property. *Longoria v. Lasater,* 292 S.W.3d 156, 165 n. 7 (Tex.App.-San Antonio 2009, pet. denied). It exists "to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell v. Ott,* 606 S.W.2d 942, 952 (Tex.Civ.App.-Waco 1980, writ ref'd n.r.e.) (quoting *Thomson v. Locke,* 66 Tex. 383, 1 S.W. 112, 115 (1886)); *see also Hahn,* 321 S.W.3d at 531 (quoting *Bell,* 606 S.W.2d at 952). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Hahn,* 321 S.W.3d at 531. The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title. *See id.; Bell,* 606 S.W.2d at 952 (holding that quiet title enables holder of feeblest equity to remove unlawful hindrance). "[T]he plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief." *Hahn,* 321 S.W.3d at 531; *see Bell,* 606 S.W.2d at 952.

Here, we have already held that Hahn's judgment lien created by his recording of the second abstract of judgment did not attach to the Property. *See* TEX. PROP. CODE ANN. § 52.001; *Wilson,* 228 S.W.3d at 233. Hahn's only remaining claim to the Property was based on his allegations under the Fraudulent Transfer Act. We

have upheld the jury's findings that Love was not an insider and that he purchased the Property in good faith. The parties stipulated that Love paid a reasonably equivalent value for the Property. Thus, Love established that he was entitled to the bona fide purchaser defense of section 24.009 of the Fraudulent Transfer Act. *See* Tex. Bus. & Com.Code Ann. § 24.009(a) (providing that "a transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee."). Thus, Love established that he had a right of ownership and that Hahn's adverse claim was a cloud on the title that equity could remove. *See Hahn,* 321 S.W.3d at 531.

We conclude that the trial court did not err in removing Hahn's claims as a cloud on Love's title to the Property.

Finally, for the reasons we have already stated, we conclude that the trial court did not err in denying Hahn's motions for judgment notwithstanding the verdict and for a new trial on the issues of constructive trust, declaratory judgment, attorney's fees, unclean hands, and removal of Hahn's cloud on Love's title.[10]

We overrule Hahn's first and second issues.

### Evidentiary Complaints

In his fourth issue, Hahn argues that the trial court erred in excluding Love's testimony about whether he was aware "that American Title Co., which closed the sale of the property from Mid–Town to Love, had no duty to examine the courthouse records to determine any adverse interest in the property he was purchasing." Hahn also argues that the trial court erred in excluding several documents.

### A. Standard of Review

The trial court determines preliminary questions about admitting or excluding evidence, and we review its rulings for an abuse of discretion. Tex.R. Evid. 104(a); *State v. Bristol Hotel Asset Co.,* 65 S.W.3d 638, 647 (Tex.2001). A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Bristol Hotel,* 65 S.W.3d at 647. Whether a trial court abused its discretion in making an evidentiary ruling is a question of law. *Id.*

In general, relevant evidence is admissible. Tex.R. Evid. 401, 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Tex.R. Evid. 401. However, Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex.R. Evid. 403.

"For the exclusion of evidence to constitute reversible error, the complaining party must show (1) that the trial court committed error and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment." *McCraw v. Maris,* 828 S.W.2d 756, 757 (Tex.1992); *see also Tex. Dep't of Transp. v. Able,* 35 S.W.3d 608, 617 (Tex. 2000) (holding that even if trial court erred in excluding evidence, challenging party still must show that error was harmful and

---

10. As we discuss below, we likewise conclude that the trial court did not err in denying Hahn's motion for new trial on the ground

that the trial court erred by excluding evidence.

stating, "To put it another way, a successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted") (citing Tex.R.App. P. 61.1).

In determining if the excluded evidence probably resulted in the rendition of an improper judgment, a court must review the entire record. *Able*, 35 S.W.3d at 617 (citing *McCraw*, 828 S.W.2d at 758). Generally, we will not reverse a judgment for erroneous rulings on admissibility of the evidence when the evidence is cumulative and not controlling on a material issue dispositive to the case. *Id.*

## B. Love's Testimony on American Title Co.'s Duty and Exhibits 27 and 28

Hahn argues that the trial court erred in excluding Love's testimony regarding the nature of American Title's duty to perform a title search and related issues. He argues on appeal that failure to allow this testimony "left the jury with the false impression that either Love had no duty to examine courthouse records or that the title examination was done by American Title and nothing was found."

In his bill of exceptions on this topic, Hahn questioned Love about whether he was aware that the title company's title search was for the company's own purposes and whether Love was aware that he had a separate duty to perform his own search of the title records. Love testified that he believed the title company would inform him of anything it found in its title search. Love also testified that he was not aware of the contents of the title company's title examination records and that he did not know that the law charged him with the responsibility to conduct his own title examination.

A title insurance policy is a contract of indemnity, and the only duty imposed by a title insurance policy is the duty to indemnify the insured against losses caused by defects in title. *Chicago Title Ins. Co. v. McDaniel*, 875 S.W.2d 310, 311 (Tex.1994). A title insurance company, like American Title, is not a title abstractor and owes no duty to examine title. *See Martinka v. Commonwealth Land Title Ins. Co.*, 836 S.W.2d 773, 777 (Tex.App.-Houston [1st Dist.] 1992, writ denied) (citing *Tamburine v. Center Sav. Ass'n*, 583 S.W.2d 942, 947 (Tex.Civ.App.-Tyler 1979, writ ref'd n.r.e.)). "In the search for information upon which must depend the decision to either issue or decline to commit itself to issue a policy, the insurance company obviously investigates that title for its own use and benefit to determine whether it will undertake the risk." *Tamburine*, 583 S.W.2d at 948–49. However, such an examination is not undertaken for the prospective grantee or lienholder to whom the policy will finally issue. *Id.* at 949. Nor would any information discovered by American Title in its own title research for purposes of issuing a title policy be imputed to Love. *See Martinka*, 836 S.W.2d at 777 (holding that title company owes no duty to point out any outstanding encumbrances to insured); *Tamburine*, 583 S.W.2d at 949 (holding that any notice of adverse claim acquired by title company was acquired while it was acting on its own behalf, not as agent of purchaser, and thus, such notice is not imputable to purchaser so as to defeat status as bona fide purchaser).

We conclude that Love's awareness or knowledge of the title company's limited obligation in conducting a title search or of any duty of his own to search the title records was irrelevant to determining whether Love had actual or constructive knowledge of Hahn's interest in the Property. Moreover, Hahn failed to establish

that Love had any duty to conduct his own title records search or any obligation to discern whether he had such a duty. Therefore, Love's testimony on such an alleged duty would be both irrelevant and misleading. The issues actually before the trial court involved Love's actual or constructive knowledge of Hahn's interest in the Property.

We hold that the trial court could have properly excluded this evidence as irrelevant and that, even if there was error in excluding it, the error did not cause the rendition of an improper judgment. *See McCraw*, 828 S.W.2d at 757.

■ Hahn also complains that the trial court erred in excluding exhibits 27 and 28, title run sheets from American Title's file. However, after Hahn initially sought to admit these exhibits, the trial court deferred discussion on their admissibility, and Hahn never attempted to introduce them again and never presented any argument to the trial court regarding why they were properly admissible. Therefore, Hahn waived his complaint with respect to these two exhibits. *See, e.g.*, TEX.R.APP. P. 33.1; *see also Tex. Prop. & Cas. Guar. Ass'n v. Nat'l Am. Ins. Co.*, 208 S.W.3d 523, 546 (Tex.App.-Austin 2006, pet. denied) (holding that to preserve error in exclusion of evidence, party must attempt to introduce evidence and if objection is raised, specify purpose of which evidence is offered and give trial court reasons why evidence is admissible, and obtain ruling from trial court).

## C. Remaining Exhibits

Hahn complains that the trial court erred in excluding the following documents: exhibit 7, Hahn's second abstract of judgment recorded on March 1, 2004; exhibit 49, a fax from Josie Chapa, an escrow assistant at Fidelity National Title, to Hahn's attorney requesting a payoff amount for Hahn's judgment lien or a copy of the release, if it had been released, in relation to the first attempted sale of the property to Strickland; exhibit 50, a fax dated November 14, 2003, to Pamela Session from Hahn's attorney containing payoff information for Hahn's judgment lien; exhibit 59, deed of trust and security agreement from a 1993 property transaction Gary completed on Love's behalf; exhibit 68, a March 9, 2004 fax with a settlement statement from an employee of American Title to Herman Gary and O'Neal Session that does not include any mention of Hahn's interest in the Property; and exhibits 70, 71, and 72, faxes from Gary to John Tamburello at American Title, dated March 2004, transmitting copies of the 2004 Correction Deed.

Regarding the second abstract of judgment recorded on March 1, 2004, Hahn argues that it was relevant to a controlling issue and not cumulative because it showed that his lien was contained in Love's chain of title. Love argues that the second abstract was inadmissible, in part, because it was recorded after Session conveyed the Property to Mid–Town, and, therefore, it failed to attach to the Property. We have already concluded that the second lien created by Hahn's second abstract of judgment did not attach to the Property, and, thus, admission of this abstract of judgment was irrelevant and potentially confusing to the jury as to the claims between Hahn and Love. *See* TEX.R. EVID. 401, 403.

■ Regarding the fax from Josie Chapa, requesting a payoff amount for Hahn's judgment lien, and the fax to Pamela Session with payoff information in relation to the first attempted sale of the property to Strickland, neither of these documents is evidence that Love had knowledge of Hahn's interest in the Property or of the Sessions' intention to transfer the Property in avoidance of Hahn's

lien. They relate to a transaction in which Love was not involved and are irrelevant and potentially confusing to the jury. *See* Tex.R. Evid. 401, 403.

■ Likewise, the March 9, 2004 fax to Herman Gary and O'Neal Session with a settlement statement from an employee of American Title does not indicate that Love had any knowledge of that document, nor did the settlement statement include any mention of Hahn's interest in the Property. Thus, these documents were irrelevant to proving Love's actual knowledge of Hahn's interest in the Property. *See* Tex.R. Evid. 401.

■ The deed of trust and security agreement from the 1993 property transaction that Gary completed on Love's behalf was duplicative of Love's own testimony, among other testimony and documents, that he and Gary had a long-standing relationship in which Love worked with Gary to purchase more than twenty properties for investment purposes. Thus, the trial court could properly have excluded the documents as needlessly cumulative. *See* Tex.R. Evid. 403.

Finally, we conclude that the trial court did not commit reversible error in excluding the three faxes from Gary to John Tamburello at American Title dated March 2004, transmitting copies of the 2004 Correction Deed. Hahn argues that these faxes demonstrate that Gary knew of problems with the validity of 2002 Deed and of Hahn's interest in the Property. He argues that this evidence was material and relevant because Gary's knowledge was imputed to Love. However, as we have already discussed, he cites no evidence to support his contention. Love testified that he had no personal knowledge of the 2004 Correction Deed or of the circumstances under which the previous transactions had fallen through, aside from Gary's statement to him that the previous purchaser

could not obtain financing. These faxes make no reference to Love and do not in any way indicate that Love had any knowledge of their existence or that he had any knowledge of the previous attempted sales or potential problems with the 2002 Deed.

We conclude the trial court could have properly excluded this evidence as irrelevant and that, even if there was error in excluding it, that error did not cause the rendition of an improper judgment. *See* *McCraw*, 828 S.W.2d at 757.

We overrule Hahn's fourth issue.

### Charge Error

In his third issue, Hahn argues that the trial court erred because Questions Four and Five of the jury charge were defective. Hahn argues that Question Four improperly restricted the jury's consideration regarding who was an insider to the transfer of the Property from the Sessions to Mid-Town and did not include the transfer to Love. Hahn further argues that the trial court, in submitting Question Five to the jury, improperly refused Hahn's instruction on Love's duty to examine courthouse records for adverse claims and his instruction that Love's title company had no duty to search the courthouse records for Love.

### A. Standard of Review

■ The standard of review for alleged error in the jury charge is abuse of discretion. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex.2006) (per curiam). "When a trial court refuses to submit a requested instruction on an issue raised by the pleadings and evidence, the question on appeal is whether the request was reasonably necessary to enable a jury to render a proper verdict." *Id.* Therefore, we will not reverse a jury verdict for the trial court's refusal to submit a question unless the refusal probably caused the rendition

of an improper judgment or probably prevented the complaining party from presenting the case on appeal. *Columbia Rio Grande Healthcare, L.P. v. Hawley,* 284 S.W.3d 851, 856 (Tex.2009); *Shupe,* 192 S.W.3d at 579. "Error in the omission of an issue is harmless 'when the findings of the jury in answer to other issues are sufficient to support the judgment.'" *Shupe,* 192 S.W.3d at 579–80 (quoting *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 750 (Tex.1980)).

### B. Question Four on Love's Insider Status

Question Four stated,

With respect to the transfer of the Property to Mid–Town, [was] any of the following an insider?

"Insider" includes, but is not limited to, (a) a relative or general partner of the debtor; or (b) a partnership in which the debtor is a general partner; or (c) a corporation in which the debtor is a director, officer, or person in control."

Answer "Yes" or "No" as to each of the following:

a. Pamela Session

b. Mid–Town

c. Bertrand Love

Hahn's proposed jury question on this issue asked more generally, "Who were the insiders in this case?" and gave more detailed instructions on the definition of an insider, including statements of law taken from Hahn's previous appeal that an insider under the Fraudulent Transfer Act is an entity whose close relationship with the debtor subjects any transactions made between debtor and the insider to heavy scrutiny and that courts are to consider the closeness of the relationship between the transferee and debtor and whether the transactions were at arm's length.

According to the pleadings and evidence, the only transaction that involved an alleged transfer of property from a debtor was the one from O'Neal and Myria Session to Mid–Town. It is undisputed the Mid–Town owed no debt to Hahn. Thus, the trial court did not abuse its discretion by phrasing the question in terms of the transaction from the Sessions to Mid–Town. Furthermore, we cannot conclude that the definition submitted to the jury by the trial court defining "insider" was incomplete so as to cause the jury to render an improper verdict. *Hawley,* 284 S.W.3d at 856; *Shupe,* 192 S.W.3d at 579.

We overrule this portion of Hahn's third issue.

### C. Question Five on Love's Status as a Purchaser in Good Faith

Question Five stated in its entirety, "Did Bertrand Love purchase the Property from Mid–Town in good faith? Good faith means honesty in fact in the transaction." Hahn's proposed jury question on this issue asked, "Did Bertrand Love purchase the property in good faith without notice of Hahn's interest in the property?" Hahn also sought to include an instruction that stated in part,

A purchaser is bound by every recital, reference and reservation contained in or fairly disclosed by any instruments which forms an essential link in the chain of title under which he claims. . . . When a transferee is an insider and knows the transferor is insolvent at the time of the transfer he cannot be a good faith transferee.

Neither the pleadings nor the evidence raised an issue regarding whether Mid–Town, the entity that transferred the property to Love, was insolvent. Furthermore, we have already concluded that, as a matter of law, the legal effect of the trial

court's partial summary judgment was that nothing in Love's chain of title would have put him on notice of Hahn's interest in the Property. Thus, we cannot conclude that the trial court's exclusion of Hahn's proposed phrasing and additional instruction probably caused the rendition of an improper judgment. *See Hawley,* 284 S.W.3d at 856; *Shupe,* 192 S.W.3d at 579.

We overrule the remainder of Hahn's third issue.

### Conclusion

We affirm the judgment of the trial court.